COMMONWEALTH *vs.* JOSEPH CARACCIOLA.

Hampden. October 1, 1990. - April 3, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Rape. Practice, Criminal*, Grand jury proceedings, Motion to dismiss.

A motion to dismiss a rape indictment was an appropriate means to test
   whether evidence of criminality had been presented to the grand jury.
   [650]

In a prosecution for rape, proof of the defendant's threats, which included
   statements that he was a police officer and would imprison the com-
   plainant if she did not obey him, when considered with the cir-
   cumstances created by the defendant's conduct and words, would be
   sufficient to constitute the force contemplated by the rape statute,
   G. L. c. 265, § 22. [650-656] O'CONNOR, J., dissenting.

INDICTMENT found and returned in the Superior Court De-
partment on September 21, 1988.

A motion to dismiss was heard by *William W. Simons*, J.,
and a question of law was reported by him to the Appeals
Court. The Supreme Judicial Court granted a request for di-
rect review.

*Andrew Silverman*, Committee for Public Counsel Ser-
vices (*Richard Rubin*, Committee for Public Counsel Ser-
vices, with him) for the defendant.

*Christina Calabrese*, Assistant District Attorney, for the
Commonwealth.

ABRAMS, J. The defendant was indicted on a charge of
rape under G. L. c. 265, § 22. Pursuant to *Commonwealth* v.
*McCarthy*, 385 Mass. 160 (1982), the defendant moved to
dismiss the indictment, arguing that there was no evidence
presented to the grand jury showing that he used force or the
threat of force against the victim. The defendant claims that,
at most, the evidence suggests fraudulent inducement to con-

sent to sexual intercourse, but that *Commonwealth* v. *Goldenberg*, 338 Mass. 377 (1959), precludes the use of fraud as force as an element of rape.

The judge summarized the grand jury testimony as follows. The defendant, who is not a police officer, pulled his vehicle alongside the victim on a downtown Springfield street. He told the victim to get off the street. She noticed that he was wearing a gun. The victim left and went to the bus station to make a telephone call. After watching her for a while, the defendant approached the victim again and said, "I thought I told you to get lost." The defendant told the victim to get in the automobile, and she obeyed. The defendant drove in what the victim believed to be the direction of the police station. The victim began to cry and the defendant told her that if she did not stop crying he would "lock [her] up for more things than [he] was planning on."[1] The defendant started to drive her home but stopped in a school parking lot instead. He began to touch her and rub her legs. The victim told him she was scared and that police officers came by that area often. He said not to be afraid, because he was a police officer.[2] He made her get on top of him and have sexual intercourse. She said that she feared that if she did not do what he wanted, he would arrest her.[3]

The judge determined that there was no evidence presented to the grand jury that the defendant used force on the victim. He concluded that the motion to dismiss should

---

[1]Although the judge does not specifically find this fact, the victim asserted in her statement to police read to the grand jury that, "He made me beg him not to lock me up." In considering the defendant's motion, we view the evidence in the light most favorable to the Commonwealth.

[2]The victim's statement also indicates that she believed the defendant was a police officer because he knew many of the officers in the Crime Prevention Bureau. She also stated that the defendant asked her if she had heard of Carlo D'Amato. When she said no, he said, "That's me."

[3]Although the judge did not report it as fact, the transcript of the grand jury proceedings indicates that, after her statement had been read, the victim added the following comment: "I would just like to mention, it doesn't sound like I was in any fear there. I was really scared. I was petrified he was going to put me in jail. I had a prior criminal record and I felt if I got arrested one more time, I was going to go to Framingham."

be allowed based on our decision in *Goldenberg, supra.* The judge did not do so. The judge reported the question[4] of the sufficiency of the evidence before the grand jury to the Appeals Court without acting on the motion to dismiss.

"The better practice is for a judge to decide the issues raised by a defendant's motion to dismiss. In the event of conviction, appellate review is available to a defendant. . . . If the motion to dismiss is allowed, the Commonwealth has the right to appeal. See Mass. R. Crim. P. 15 (a), 378 Mass. 882 (1979)." *Commonwealth* v. *Fitta,* 391 Mass. 394, 398 (1984). We allowed the defendant's application for direct appellate review. We conclude that the motion to dismiss should be denied.

Although it is "the well established principle that the adequacy of the evidence presented to the grand jury cannot be tested by a motion to dismiss," *Commonwealth* v. *Robinson,* 373 Mass. 591, 592 (1977), in the *McCarthy* case we carved out a very limited departure from this principle where *no* evidence of criminality was presented to the grand jury. *McCarthy, supra* at 163. We ruled that the prosecutor must present sufficient evidence to establish the identity of the accused, and probable cause to arrest him or her. See *id.* However, the "requirement of sufficient evidence to establish [these two facts] is considerably less exacting than a requirement of sufficient evidence to warrant a guilty finding." *Commonwealth* v. *O'Dell,* 392 Mass. 445, 451 (1984). With these principles in mind, we turn to the judge's determination that the motion to dismiss pursuant to *McCarthy* should be allowed.

General Laws c. 265, § 22 (b), provides, "Whoever has sexual intercourse or unnatural sexual intercourse with a person and compels such person to submit by force and against his will, or compels such person to submit by threat of bodily

[4]The precise question reported was: "Is the Massachusetts Supreme Judicial Court's ruling in *Commonwealth* v. *Goldenberg*[, 338 Mass. 377 (1959)], that fraud cannot provide a substitute for the statutory requirement of force in the case of rape, authority requiring dismissal of the indictment" at bar?

injury, shall be punished . . . ." The statute thus establishes two proscribed means of compelling someone to submit: (1) by force and against his will, or (2) by threat of bodily injury.[5] The evidence before the grand jury was sufficient on the issue of force.

We do not agree with the judge's assessment that no evidence was presented to satisfy the statutory words "by force and against [her] will." The words of the statute are not limited solely to physical force.[6] We previously have recognized that a defendant can be guilty of rape without having used or threatened physical force if the consent of the complainant was obtained from the victim's fear arising from threats or conduct of a third party. See *Commonwealth* v. *Therrien*, 383 Mass. 529, 538-539 (1981). We also have held that a rape occurs where intercourse is had with only "such force as was necessary to accomplish the purpose" when the victim was "wholly insensible so as to be incapable of consenting." *Commonwealth* v. *Burke*, 105 Mass. 376, 380-381 (1870). Likewise have we instructed that the jury is entitled to "consider the entire sequence of events and acts of [the] defendants as it affected the victim's ability to resist." *Commonwealth* v. *Sherry*, 386 Mass. 682, 688 (1982). We do not require victims to use physical force to resist an attack. See *id.* These cases are cited to illustrate the point that an examination of the circumstances or fear in which the victim is placed, the impact of those circumstances or fear on the victim's power to resist and the defendant's conduct all are relevant to the determination whether conduct complained of by the victim was accomplished *by force* and against the victim's will. No case has held that rape is limited solely to the

---

[5] The evidence before the grand jury did not focus on the question whether the defendant used his gun (which was in plain view) in any manner or displayed it so as to permit this case to go to the jury on the question of a threat of bodily injury. We therefore do not discuss that aspect of the statute.

[6] A dictionary defines "force" as "to constrain or compel by physical, moral, or intellectual means." Webster's New International Dictionary 986 (2d ed. 1959).

use of physical force. Indeed, the words of the statute are to the contrary. See *infra*.

Because robbery and rape are both crimes of violence, there is no reason to conclude the Legislature assigned a different, more limited meaning to the word "force" in the rape statute from its meaning in the robbery statute. In discussing the word force as used in robbery, the court said that "actual force is applied to the body, constructive force is by threatening words or gestures and operates on the mind." *Commonwealth* v. *Novicki*, 324 Mass. 461, 467 (1949), quoting *Commonwealth* v. *Snelling*, 4 Binn. 379, 383 (Pa. 1812) (robbery). See also *Commonwealth* v. *Richards*, 363 Mass. 299, 304 (1973) (robbery). In robbery cases, we said that "[w]hether actual or constructive force is employed, the degree of force is immaterial so long as it is sufficient to obtain the victim's property 'against his will.' " *Commonwealth* v. *Jones*, 362 Mass. 83, 87 (1972). Thus, a purse snatching that is accomplished with force "sufficient to produce awareness, although the action may be so swift as to leave the victim momentarily in a dazed condition," is considered a robbery rather than a larceny which is theft without force. *Id.* at 89. Moreover, a victim's statement that "I was scared to death" is sufficient to show the use of force if the jury decides that "her fear aided the defendant in effecting the taking." *Id.* The defendant's argument that physical force is a required element in rape cases asks us to assume that the Legislature intended to give greater protection to property than to bodily integrity. We decline to make such an unwarranted assumption.

Relying on *Commonwealth* v. *Goldenberg*, 338 Mass. 377 (1959), the defendant asserts that, because he was not a police officer, his statements are merely fraudulent, and fraud is not force. Therefore, he concludes that his motion to dismiss should be allowed. We do not agree. We think the defendant's lie about being a police officer is irrelevant. The complainant was entitled to take the defendant's threatening words and his conduct at face value. Those threats and the circumstances created by his conduct and his words are suffi-

cient to constitute the force contemplated by the statute. His words and conduct also distinguish this case from *Goldenberg*. In that case, there were no threats and no conduct[7] which were calculated to instill fear in the complainant in order for the defendant to achieve his goal. There was no actual or constructive force in *Goldenberg*. As we read the statute, the force needed for rape may, depending on the circumstances, be constructive force, as well as physical force, violence, or the threat of bodily harm. Where, as here, the Commonwealth relies on constructive force, it also must prove that the sexual intercourse was against the will of the complainant.

The statute requires that the Commonwealth prove its case by demonstrating that the person charged has sexual intercourse or unnatural sexual intercourse with a person either "by force *and against his will*" or "by threat of bodily injury." See G. L. c. 265, § 22 (*b*), *supra* at 650-651 (emphasis supplied). Thus, contrary to the dissent, a strict reading of the statute does not limit the Commonwealth's proof to the use or threat of bodily injury.[8] Indeed, the dissent's construc-

---

[7] In *Goldenberg*, that defendant told the complainant "he had to have intercourse with her," that "it would help in some way." *Goldenberg*, *supra* at 380. Additionally, the complainant in *Goldenberg* said that "she knew it was not right," that she "felt very dizzy and very, very funny," that she felt "powerless in a way," and that even if "she wanted to do something she did not believe that she could have." *Goldenberg*, *supra* at 381. Those facts are a far cry from the conduct and threats by this defendant. The fear experienced by the complainant in this case was not present in *Goldenberg*.

[8] Although the dissent invokes a wealth of statutory construction principles, it does not mention "the rule that where the Legislature has employed specific language in one [clause], but not in another, the language should not be implied where it is not present." *Commonwealth v. Galvin*, 388 Mass. 326, 330 (1983). In this statute, the Legislature has used specific language to establish that the proscribed threats are only "threats of bodily injury," but has not so limited the type of proscribed force. If the Legislature intended the interpretation urged by the dissent, it could have prohibited intercourse obtained "by bodily injury or threat of bodily injury." Indeed, even if the Legislature had used the phrase "by force or threat of force," the dissent's argument would be more persuasive. But where the Legislature chose two completely different phrases in the two clauses, it must have intended different meanings.

tion reads out of the statute the requirement that the force used be against the will of the person so compelled. There would be no need for that requirement if the force used were limited solely to physical force. The dissent resolves this dilemma by asserting that "the words, by 'force and against his will,' appear to be redundant." *Post* at 663. However, "[n]o portion of the statutory language may be deemed superfluous." *Commonwealth* v. *Gove*, 366 Mass. 351, 354 (1974). It is precisely this requirement that the intercourse be against the victim's will that ensures, contrary to the dissent's assertion, that rape continues to be a crime of violence. Further, although penal statutes must be strictly construed, that maxim "does not require 'that language be strained to reach a result favorable to the defendant.'" *Commonwealth* v. *McMenimon*, 295 Mass. 467, 470 (1936), quoting *Commonwealth* v. *Tsouprakakis*, 267 Mass. 496, 500 (1929). The dissent's construction of the statute strains to reach its result by reading the words "against [the] will" of the complainant out of the statute.

Applying the statutory language to the evidence presented, we conclude there was evidence of force and constraint of the victim's will. The evidence indicates that the defendant wore a gun; that he ordered the victim into his car; that he named a number of police officers; that he gave her a false name; and that he told her he was a police officer, and would imprison her if she did not obey him. The defendant made the complainant beg him not to "lock her up." The facts indicate that the woman was "petrified" by the defendant's threats that he would "lock her up." The issue whether, in light of the circumstances, the victim's obedience or submission to the defendant's threats was by force and against her will is for the petit jury.

The evidence before the grand jury was similar to that found sufficient to support rape *convictions* in cases from other jurisdictions. In *State* v. *Burke*, 522 A.2d 725 (R.I. 1987), the defendant, a uniformed police officer with a gun, told the victim to get into his cruiser. She complied because she was afraid. He drove her to his house and forced her to

perform oral sex on him. The court held that "the defendant's position of authority was the determinative factor in the complaining witness's submission to his command . . . . [W]e shall not require that a victim hear the actual utterance of threatening words before we shall allow a jury to find reasonable fear of violence . . . . This appearance of authority, combined with the fact that defendant was armed, and the peculiar vulnerability of the victim are sufficient to support a jury verdict that defendant coerced submission by impliedly threatening the victim. . . ."[9] Id. at 735-736. In Walter v. State, 9 Md. App. 385 (1970), a police officer wearing a gun ordered the victim into his car, drove to an isolated spot, and, in an abrupt tone of voice, commanded the victim to have sexual intercourse with him. The appellate court upheld the sufficiency of the evidence, stating, "It is apparent the accused deliberately placed the victim in a situation where she would be afraid, with the expectation she would thereby yield to his lustful demands without physical resistance." Id. at 395.[10]

---

[9]Although the Rhode Island statute at issue in Burke is worded differently from G. L. c. 265, § 22, the differences are immaterial. The Rhode Island law proscribes sexual intercourse achieved by "force or coercion." The definition of "force or coercion" that was at issue in Burke was "when the accused does any one of the following: . . . (C) coerces the victim to submit by threatening to use force or violence on the victim and the victim reasonably believes that the accused has the present ability to execute those threats." R.I. Gen. Laws § 11-37-1 (1981 Reenactment). See Burke, supra at 734. Coercing the victim to submit by threatening to use force or violence is essentially the same as "compel[ling] such person to submit by threat of bodily injury." G. L. c. 265, § 22 (b). The only difference is that the Rhode Island law has the added requirement about the victim's belief in the defendant's ability to carry out the threat. Although our statute does not have such a requirement, the evidence before the grand jury more than satisfied that standard.

[10]At oral argument, the defendant emphasized the court's statement in Walter that "we do not rule that a rape occurs when a victim yields solely because an officer threatens to arrest her." Id. However, the court went on to say that the additional evidence demonstrating the fear into which the victim was placed was sufficient to prove force or lack of consent. The case at bar likewise contains evidence beyond an isolated threat to arrest. The evidence, if believed, proves that the intercourse resulted from the coercive

Similarly, in *Davis* v. *Commonwealth*, 186 Va. 936 (1947), two police officers, one of whom was armed, directed a victim into their car, went to an isolated spot, and forced her to have intercourse with each of them. Observing that the victim "was completely in the power of the officers," the court ruled that the evidence of force was sufficient. *Id.* at 949. These cases recognize, as we do, the particular power police officers — or would-be police officers — hold over ordinary citizens and the potential for abuse of that power to compel submission to unwanted sexual advances with less resistance than they might otherwise encounter.[11] See *Commonwealth* v. *Mlinarich*, 518 Pa. 247, 264-265 (1988) (Opinion in Support of Reversal) (arguing in dicta that "[i]f a policeman, or someone posing as a policeman, pulls a female motorist to the side of the road at night and threatens to throw her in jail until morning unless she has intercourse with him, and she complies" there would be sufficient evidence to allow the jury to decide if the intercourse was obtained by forcible compulsion).[12]

---

atmosphere and fear of the complainant as a result of the words and conduct of the defendant.

[11]The defendant contends that the case of *People* v. *Cavanaugh*, 30 Cal. App. 432 (1916), is more relevant. There, the court ruled that a jury instruction should have been allowed stating that no rape occurred if the victim's consent had been obtained because of her belief that the defendant was a police officer and would arrest her. It is clear from the opinion, however, that the reviewing court disbelieved the victim's account of the incident. See *id.* at 434. Moreover, the continuing authority of the *Cavanaugh* case is in doubt. In *People* v. *Cassandras*, 83 Cal. App. 2d 272, 278 (1948), the court suggested that the case "seem[s] to reflect the old rule that in order to constitute a forceful rape the prosecutrix had to make the most vigorous and forceful resistance. That is no longer the law."

[12]The defendant cites the Opinion in Support of Affirmance in the *Mlinarich* case to demonstrate that other jurisdictions require "evidence of force or threats" in addition to nonconsent. As a preliminary comment, that opinion states a view of Pennsylvania law held by only three of the participating members of the Pennsylvania Supreme Court. The Justices were equally divided over whether to affirm the Superior Court's reversal of a rape conviction. The court's stalemate permitted the lower court decision to stand. More substantially, however, that opinion demonstrates the extremes to which a restrictive construction of a rape statute can lead. The defendant, a sixty-three year old man, engaged in a pattern of sexual

We hold that there was evidence presented to the grand jury that the defendant engaged in sexual intercourse with the victim by force and against her will. Therefore, the motion to dismiss the indictment should not be allowed.

*So ordered.*

O'CONNOR, J. (dissenting). "At common law, rape was defined as 'the carnal knowledge of a woman forcibly and against her will.' 4 W. Blackstone, Commentaries 210 (1778)." *Commonwealth* v. *Chretien*, 383 Mass. 123, 127 (1981). The Charters and General Laws of the Colony and Province of Massachusetts Bay, c. 18, § 15 (1814), provided in relevant part: "If any man shall ravish any maid, or single woman, committing carnal copulation with her by force, against her own will . . . he shall be punished . . . ." *Id.* Prior to the amendment of G. L. c. 265, § 22 (Ter. Ed.) (defining and punishing rape), and G. L. c. 277, § 29 (Ter. Ed.) (defining the word "rape" as used in an indictment), by St. 1974 c. 474, §§ 1, 7, those statutes "utilized the common law terms to define rape." *Id.* at 129. Statute 1974, c. 474, § 1, rewrote G. L. c. 265, § 22, to read "[w]hoever has sexual intercourse or unnatural sexual intercourse with a person, and compels such person to submit by force and against his will, or compels such person to submit by threat of bodily injury, shall be punished . . . ." Although c. 265, § 22, was again amended by St. 1980, c. 459, § 6, in order to provide varying penalties in accordance with the presence or absence

abuse of a fourteen year old girl in his legal custody culminating eventually in forced intercourse. Each time the activity occurred, she refused his overtures and he compelled her to submit by threatening to return her to the detention center from which she had been placed in his care. The Opinion in Support of Affirmance would have held that the rape statute's requirement of "forcible compulsion" meant that the victim's compliance must be involuntary. Because, according to the Opinion in Support of Affirmance, this fourteen year old girl had been left with a choice between compliance and a return to the detention center, no rape occurred. We decline to follow that opinion in Massachusetts.

of specified aggravating factors, the statutory definition of rape continues to be the definition supplied by St. 1974, c. 474, § 1. See G. L. c. 265, § 22 (*a*) (*b*).

Thus, for several hundred years, a proper understanding of the word "force," as used in the Commonwealth's rape statutes, has been critical to their application, and nothing suggests that, as successor statutes or amendments were enacted, the Legislature intended a redefinition of that term. Nevertheless, not until today has this court discovered that the Legislature, presumably from the beginning, has intended "force" in rape to include constructive, as well as physical, force. The very lateness of the court's discovery makes it questionable. This is especially so when one considers the principle, deeply imbedded in our jurisprudence, that criminal statutes are to be strictly construed against the Commonwealth. I do not agree that the word, "force," in G. L. c. 265, § 22, clearly refers to constructive, nonphysical, force.

One may well argue that there ought to be a law criminalizing the kind of conduct ascribed to the defendant before the grand jury and that the range of penalties ought to be the same as provided in G. L. c. 265, § 22 (*b*), for rape. But those are matters for the Legislature, not judges, to resolve. The court's responsibility is to interpret statutes as they are written and, with respect to criminal statutes, to resolve statutory ambiguities against the government. As Justice Holmes wrote in *McBoyle* v. *United States*, 283 U.S. 25, 27 (1931), "[a]lthough it is not likely that a criminal will carefully consider the text of the law before he murders or steals, it is reasonable that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear." In addition, the rule that criminal statutes must be strictly construed against the government "is founded on the tenderness of the law for the rights of individuals; and on the plain principle that the power of punishment is vested in the legislative, not the judicial department. It is the Legislature, not

the Court, which is to define a crime, and ordain its punishment." *United States* v. *Wiltberger*, 18 U.S. (5 Wheat.) 76, 95 (1820). "It is an ancient rule, to which we have long adhered, that '[p]enal statutes must be construed strictly and not extended by equity, or by the probable or supposed intention of the legislature as derived from doubtful words; but that in order to charge a party with a penalty, he must be brought within its operation, as manifested by express words or necessary implication . . . .' We examine the statute, therefore, particularly mindful that its words are not to be stretched to accomplish a result not expressed." *Collatos* v. *Boston Retirement Bd.*, 396 Mass. 684, 686-687 (1986), quoting *Libby* v. *New York, N.H. & H.R.R.*, 273 Mass. 522, 525-526 (1930).

Citing *Commonwealth* v. *Therrien*, 383 Mass. 529, 538-539 (1981), the court states that "[w]e previously have recognized that a defendant can be guilty of rape without having used or threatened physical force if the consent of the complainant was obtained from the victim's fear arising from threats or conduct of a third party." *Ante* at 651. The court implies that *Therrien* provides support for the proposition that neither physical force nor the threat of bodily injury is necessary for rape, and that some other kind of threat will suffice. *Therrien* does not support that proposition. In *Therrien*, the defendant was one of three men who had had intercourse with a woman. The defendant did not personally use physical force on the victim or threaten her with bodily harm, but his conduct followed, and took advantage of, the use of force in his presence by the other two men to compel the victim to submit to intercourse with them. In concluding that the evidence warranted a finding that the defendant was guilty of rape, the court reasoned that, "[i]f the victim appears to consent to intercourse because of a threat of a third person or because of fears arising from actions of a third person, and a defendant knew of those threats or of the circumstances causing those fears, such a defendant could properly be found guilty of rape." *Id.* at 538-539. *Therrien* only stands for the principle that a defendant can be found to

have consciously used the conduct of others as a threat of bodily harm to induce intercourse with him, and thereby to have committed rape. There is nothing in the *Therrien* opinion that even implies that intercourse obtained without physical force or threat of bodily harm constitutes rape.

The victim in this case told the grand jury that the defendant, wearing a gun, told her to get into the car with him and that he started driving toward the police station. She said that she "started to cry and he said that if [she] cried he would lock [her] up for more things than he was planning on. He made [her] beg him not to lock [her] up." Explaining why she submitted to intercourse, the victim testified: "I felt that if I did not do what he wanted, he was going to arrest me. . . . I was really scared. I was petrified he was going to put me in jail. I had a prior criminal record and I felt if I got arrested one more time I was going to go to Framingham." There was no suggestion in the victim's testimony that she submitted to intercourse because of a threat of bodily injury. The victim's testimony was clear. She submitted in order to avoid arrest, prosecution, and resulting imprisonment. Surely, there is nothing in *Therrien* that implies that one who obtains intercourse by fraudulently impersonating a police officer and threatening the victim with arrest, prosecution, and imprisonment violates G. L. c. 265, § 22 (*b*).

The court states: "No case has held that rape is limited solely to the use of physical force. Indeed, the words of the statute are to the contrary." *Ante* at 651-652. Of course, I do not contend that rape is limited solely to the use of physical force. As the statute expressly provides, rape also includes threat of bodily injury as a means to compel intercourse. My contention is that rape consists of a use of physical force or a threat to do bodily injury — related concepts — in order to compel a person to submit to sexual intercourse. If the court's intention is simply to point out that we have never before said that the word, "force," in our rape statute is limited to physical force, my response is that apparently, despite the resourcefulness of prosecutors, no one ever before has argued to this court that a rape may be committed without

either physical force or threat of bodily injury. Were the statute fairly susceptible to such a construction, one would reasonably expect that argument to have been made long before now.

The out-of-State cases mentioned by the court warrant little discussion. I shall refrain from distinguishing the out-of-State statutes from G. L. c. 265, § 22. It is enough to say that the core of each of those decisions is the court's conclusion that the evidence was sufficient to warrant a finding that the defendant compelled the victim to submit to intercourse by threatening bodily injury. Those cases do not support the court's construction of G. L. c. 265, § 22 (*b*).

I turn to the court's argument that, "[b]ecause robbery and rape are both crimes of violence, there is no reason to conclude the Legislature assigned a different, more limited meaning to the word 'force' in the rape statute from its meaning in the robbery statute." *Ante* at 652. The court's argument seems to assume that the word, "force," in the robbery statutes, G. L. c. 265, § 19, and c. 277, § 39, is not limited to physical force. The court's assumption is unjustified. Chapter 265, § 19, provides in relevant part that "[w]hoever . . . by force and violence, or by assault and putting in fear" steals from another shall be punished. Chapter 277, § 39, defines the word, "robbery," as "[t]he taking and carrying away of personal property of another from his person and against his will, by force and violence, or by assault and putting in fear, with intent to steal." The robbery statutes distinguish between "force and violence" (physical force) and "assault and putting in fear" (constructive force), and it is clear from our robbery cases that "assault and putting in fear" is the equivalent of threat of bodily injury. Thus, an interpretation of "force" in the rape statute as referring only to physical force does not suggest that the Legislature assigned a more limited meaning to that word in the rape statute than in the robbery statutes. The rape statute and the robbery statutes criminalize the use of physical force or threat of bodily injury to accomplish different objectives.

The court's reference to robbery and rape as "crimes of violence" is worthy of comment. I agree that robbery and, until today, rape, have been considered to be crimes of violence. However, now that neither physical force nor threat of bodily injury is a necessary element of rape — now that threat of arrest, prosecution, and incarceration, and presumably other threats not involving bodily injury, whether accompanied by fraud or not, are enough — rape appears no longer to be a necessarily violent crime. The court's holding is not expressly limited to threats made by real or make-believe police officers, and it is difficult to see how, with principle, it can be so limited. If a defendant obtains intercourse by threatening his employee, or by threatening a fellow employee under his supervision with demotion or job loss, is that constructive force sufficient for rape? If not, why not, in light of today's decision? If so, rape in such circumstances cannot truly be characterized as a violent crime.

The court's construction of G. L. c. 265, § 22 (*b*), not only runs counter to the important principle that criminal laws must be construed strictly, but it also runs afoul of another, perhaps less important but nevertheless time honored and helpful, rule of statutory construction. The statute's express provision that it is a crime to compel a person to submit to sexual intercourse by "force . . . or . . . by threat of bodily injury," forcefully suggests that the word "force" in that context does not include threat of bodily injury. If "force" does include threat of bodily injury, the words "or . . . by threat of bodily injury" add nothing to the statute. "Where it is possible, as it is here, a statute should be construed so as to avoid rendering words in that statute meaningless." *A Juvenile, petitioner*, 364 Mass. 531, 536 (1974). "[E]very phrase of a statute should be given some effect." *Commonwealth* v. *Brooks*, 366 Mass. 423, 428 (1974). In order to give meaning — effect — to the words, "or . . . by threat of bodily injury," it is necessary to construe "force" as not including threat of bodily injury and, if "force" does not include "threat of bodily injury," there can be no justification for

saying that it does include other nonphysical forces such as threat of arrest, prosecution, and incarceration — or job loss.

There is one more ancient aid to statutory construction that the court has chosen to ignore: "Expressio unius est exclusio alterius." *Iannella* v. *Fire Comm'r of Boston*, 331 Mass. 250, 252 (1954). "[T]he statutory expression of one thing is an implied exclusion of other things omitted from the statute." *Collatos* v. *Boston Retirement Bd.*, 396 Mass. 684, 687 (1986). *Commonwealth* v. *Berkshire Life Ins. Co.*, 98 Mass. 25, 29 (1867). General Laws c. 265, § 22 (*b*), expressly and specifically provides that compelling intercourse by threat of bodily injury is a crime. The statute omits reference to any other threat, strongly implying that no other threat will suffice for rape.

General Laws c. 265, § 22 (*b*), provides that "[w]hoever has sexual intercourse or unnatural sexual intercourse with a person and compels such person to submit by force and against his will, or compels such person to submit by threat of bodily injury, shall be punished . . . ." By a process of reasoning that I am unable to understand, the court concludes that the construction of c. 265, § 22 (*b*), for which I argue "reads out of the statute the requirement that the force used be against the will of the person so compelled," whereas if the statute is construed as the court construes it, those words are given meaning. *Ante* at 654. Of course, the relevant rule of construction is that meaning must be given to every statutory word "[w]here it is possible" to do so. *A Juvenile, petitioner, supra* at 536. Here, the words, "by force and against his will," appear to be redundant no matter which construction is adopted because the act of *compelling* a person to submit to intercourse necessarily involves a violation of that person's will, and that is true regardless of whether the compulsion is accomplished by physical or nonphysical force. The court's interpretation of the statutory word, "force," as including nonphysical force does not give any meaning to the phrase, "and against his will," that that phrase would not have if the word, "force," were limited to physical force.

In my view, one that seems to be shared by the court, no evidence was presented to the grand jury demonstrating probable cause to arrest the defendant for obtaining sexual intercourse by the use of physical force or threat of bodily injury. Unlike the court, however, for the reasons I have expressed, I believe that it follows from that that no evidence was presented of probable cause to arrest the defendant for rape. Because I also believe that "[f]raud cannot be allowed to supply the place of the force which the statute makes mandatory," *Commonwealth* v. *Goldenberg*, 338 Mass. 377, 384 (1959), I conclude, as did the Superior Court judge, that the indictment ought to be dismissed.