**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals

## For the First Circuit

No. 02-2390

GEORGE ECONOMOU,

Petitioner, Appellant,

v.

PETER A. PEPE, JR.,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark L. Wolf, U.S. District Judge]
[Hon. Robert B. Collings, U.S. Magistrate Judge]

Before

Lipez, Circuit Judge,
Campbell and Stahl, Senior Circuit Judges.

Dana A. Curhan for appellant.
Linda A. Wagner, Assistant Attorney General, with whom Thomas
F. Reilly, Attorney General, and Cathryn A. Neaves, were on brief
for appellee.

May 18, 2004

**CAMPBELL**, <u>Senior Circuit Judge</u>.  Appellant, George Economou, was charged by the Commonwealth of Massachusetts with sexual offenses that he had allegedly committed against two of his daughters.  A Middlesex Superior Court jury found him guilty on several counts, including rape of a child under sixteen (statutory rape of his daughter Martha) in violation of Mass. Gen. Laws ch. 265, § 23, rape of a person aged sixteen or over (Martha) in violation of Mass. Gen. Laws ch. 265, § 22(b), assault with intent to rape (Martha) in violation of Mass. Gen. Laws. ch. 265, § 24, indecent assault and battery on a child under age fourteen (his daughter Virginia) in violation of Mass. Gen. Laws ch. 265, § 13B, and indecent assault and battery on a person aged fourteen or over (Martha) in violation of Mass. Gen. Laws ch. 265, § 13H.  Appellant was sentenced to multiple concurrent life sentences.  Appellant appealed from his convictions, and the Massachusetts Appeals Court affirmed in a memorandum pursuant to Mass. App. Ct. R. 1:28. <u>Commonwealth</u> v. <u>Economou</u>, 46 Mass. App. Ct. 1122 (1999). Thereafter, appellant filed a petition for rehearing in the Appeals Court and an application for further appellate review in the Supreme Judicial Court.  Both were denied, exhausting appellant's state remedies.  <u>Commonwealth</u> v. <u>Economou</u>, 429 Mass. 1107 (1999).

On May 26, 2000, appellant brought the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the District of Massachusetts

challenging, in essence, the adequacy of the evidence upon which his convictions for the statutory rape, rape, and assault with intent to rape his daughter, Martha, were based. On November 6, 2001, the federal magistrate judge issued a report and recommendation that the petition be denied. On August 26, 2002, after objections had been filed, the district judge issued an order denying the petition. On September 25, 2002, appellant filed an application for a certificate of appealability, which the district court allowed. This appeal followed.

## Background

Both parties adopt the version of the facts set forth by the Massachusetts Appeals Court in its unpublished affirmance, except appellant denies any assumption therein that his daughter Martha's age at the time of the alleged sexual intercourse was below sixteen years. Our brief factual summation in this part of the opinion rests upon the Massachusetts Appeals Court's description of the facts. We reserve until later the question of whether the evidence sufficed to show that Martha was under age sixteen when intercourse occurred.

Appellant lived with his second wife and four children, Martha, Anthony, Jenny, and Virginia,[1] in Billerica, Massachusetts. On various occasions, appellant whipped and struck his daughters. His sexual molestation of Martha began in 1982 when Martha was

---

[1]The names of the victims are pseudonyms.

-3-

about twelve years old and continued while appellant's second wife was hospitalized. According to Martha, appellant would touch her breasts, thighs, and vagina and kiss her on the mouth and breasts. When Martha was fifteen years old, appellant began having penile intercourse with her. On some occasions, appellant would insert his penis in Martha's anus until she cried, at which time he would cease and would proceed to have penile intercourse with her.

Eventually, appellant separated from his second wife and moved to Lowell, Massachusetts with the children. Thereafter, he began a relationship with another woman, and the sexual relationship with Martha (then age twenty-four) ended. Also, Martha began dating her future husband, Richard, leading to two physical assaults upon her by appellant. During the next two years, on three occasions appellant sexually assaulted his then twelve-year-old daughter, Virginia.

In April of 1996, after an investigation by the Lowell Police Department and the Department of Social Services ("DSS"), Martha and Virginia disclosed appellant's physical and sexual abuse. This disclosure and the subsequent DSS investigation led to appellant's arrest and indictment.

**Discussion**

Appellant raises two issues. First, he argues that the evidence was insufficient to convict him of the statutory rape

-4-

counts[2] because no rational trier of fact could have found proof of guilt beyond a reasonable doubt that Martha was under age sixteen when the penile-vaginal penetration commenced. Secondly, he argues that the evidence was insufficient to convict him of rape and assault with intent to rape after Martha reached age sixteen because the evidence did not establish that he had engaged in or attempted intercourse by compelling Martha to submit to the sexual acts either by force and against her will or by threat of bodily injury.

There are two potential bases for granting an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court: (1) the state adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) the state adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d); DiBenedetto v. Hall, 272 F.3d 1, 6 (1st Cir. 2001).

Under the second criterion, the federal court must presume that the state court's determination of factual issues is correct, and petitioner carries "the burden of rebutting the

---

[2]The statutory rape counts for which appellant was convicted were based only on the allegation that appellant had engaged in intercourse with Martha.

-5-

presumption of correctness by clear and convincing evidence." 28 U.S.C. §§ 2254(d)(2) & (e)(1).

In cases such as this, we review de novo the district court's denial of habeas relief. Nadeau v. Matesanz, 289 F.3d 13, 15 (1st Cir. 2002).

Appellant concedes in his appellate brief that a proper application of the tests traditionally applied by the Massachusetts courts to determine the sufficiency of the evidence will also satisfy the requirements laid down in Jackson v. Virginia, 443 U.S. 307, 317-19 (1979) (stating, upon reviewing a habeas petition, "[t]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."). He contends, however, that the Massachusetts Appeals Court allowed his conviction to stand on what under both state and federal criteria would amount to less than proof beyond a reasonable doubt. To have done so, he contends, is objectively unreasonable, causing the decision of the state court to lie "outside the universe of plausible, credible outcomes." Compare McCambridge v. Hall, 303 F.3d 24, 37 (1st Cir. 2002) (overruling this stringent standard in favor of more lenient interpretation of the "unreasonable application" requirement of 28 U.S.C. § 2254). As did the district court and the Massachusetts Appeals Court, however, we hold that sufficient evidence was adduced in the

Massachusetts trial court to have allowed a rational trier of fact to find the elements of the crime beyond a reasonable doubt. See Jackson, 443 U.S. at 319. Accordingly we deny the petition for habeas relief.

A. Statutory Rape.

Appellant argues that the only evidence supporting the allegation that he had sexual intercourse with Martha before she was age sixteen was Martha's testimony that appellant began having penile intercourse with her when she was "around fifteen." This testimony, appellant adds, was from a remove of almost ten years.

We need not decide whether this testimony, alone, is sufficient because Martha's testimony and the surrounding evidence provides additional verification that she was under sixteen years old at the time of intercourse. The Massachusetts Appeals Court noted that Martha testified not only that she was "about fifteen" when this intercourse first occurred, but also that she remembered she was a student at St. Joan D'Arc Junior High School when intercourse had commenced. The record shows that Martha did not, in fact, reach age sixteen until she had left that school. As the Appeals Court noted, the evidence indicates Martha began first grade in the fall of 1976 when she was six years old. If so, it was in the fall of 1982 that she entered St. Joan D'Arc Junior High, where she remained for three years, repeating one of the grades. She was thus well under age sixteen throughout her

enrollment there. This conclusion is also supported by Martha's testimony that she graduated from the high school in 1989, a fact making her fifteen years old or even younger by the time she left St. Joan D'Arc (her birthday was on July 1). Based on the trial transcript, therefore, we conclude that on the evidence presented a rational trier of fact could have determined beyond a reasonable doubt that Martha was under age sixteen at the time she left St. Joan D'Arc Junior High in the summer of 1985; that intercourse had commenced while she was still at that school; and that she was thus under age sixteen at the time. Accordingly, we, like the district court, conclude that there was sufficient evidence. <u>Jackson</u>, 443 U.S. at 319.

As to the second criterion, the result is the same. Appellant has not presented clear and convincing evidence that rebuts the Appeals Court's decision. 28 U.S.C. §§ 2254(d)(2) & (e)(1).

B. Rape and Assault with Intent to Rape.

To obtain a conviction of forcible rape under Massachusetts statutory law, the Commonwealth must show that the intercourse was obtained by appellant's "compell[ing]" the victim to "submit by force and against his will" or "by threat of bodily injury." Mass. Gen. Laws ch. 265, § 22(b). Here, the Commonwealth relied on a theory of constructive force. The "force needed for rape may, depending on the circumstances, be constructive force, as

well as physical force, violence, or the threat of bodily harm."
Commonwealth v. Caracciola, 569 N.E.2d 774, 777 (Mass. 1991). In
discussing the word "force" as used in robbery, the Supreme
Judicial Court said that "actual force is applied to the body,
constructive force is by threatening words or gestures and operates
on the mind." Commonwealth v. Novicki, 87 N.E.2d 1, 4 (Mass.
1949). Where, as here, the Commonwealth relies on constructive
force, it also must prove that the sexual intercourse was against
the will of the complainant. Caracciola, 569 N.E.2d at 777.

Petitioner argues that the Commonwealth presented
evidence only that Martha had some unexpressed reservations and
hindsight regrets at having engaged in sexual intercourse with her
father but that it failed to provide evidence that, while the acts
were happening, Martha communicated to appellant her lack of
consent and that the acts were against her will. Accordingly,
petitioner contends, the Commonwealth did not satisfy its burden of
proving that the acts were non-consensual, and the Appeals Court
did not apply the Jackson standard correctly when it affirmed the
conviction under these two counts.[3]

We find, however, sufficient evidence to support the
jury's verdict based on a theory of constructive force.

---

[3]The Appeals Court noted that this element was also an
element for the assault count.

-9-

First, Martha's testimony supports a finding that her father's sexual acts were against her will when they occurred.[4] She testified that she tried to keep her legs shut but he would force them open, that, in an effort to resist him, she wore

---

[4]In his brief, appellant, like the Appeals Court, equates the element of lack of consent with the element that the sexual intercourse was against the will of the complainant. In Caracciola, the Supreme Judicial Court discussed at length the elements of proving rape by constructive force, making note of the additional requirement in such cases that the intercourse be against the complainant's will. 569 N.E.2d at 776-78. It did not explicitly require that, in addition to proving that the intercourse was against the complainant's will, the Commonwealth prove that there was no consent. Id. Indeed, it implied that the inquiries are identical:

> We previously have recognized that a defendant can be guilty of rape without having used or threatened physical force if the consent of the complainant was obtained from the victim's fear arising from threats or conduct of a third party. . . . These cases are cited to illustrate the point that an examination of the circumstances or fear in which the victim is placed, the impact of those circumstances or fear on the victim's power to resist and the defendant's conduct all are relevant to the determination of whether conduct complained of by the victim was accomplished *by force* and against the victim's will.

Id. at 776. In Commonwealth v. Lopez, however, the court stated, "the Commonwealth must demonstrate beyond a reasonable doubt that the defendant committed sexual intercourse (1) by means of physical force, nonphysical, constructive force, or threats of bodily harm, either explicit or implicit *and* (2) at the time of penetration, three was no consent." 745 N.E.2d 961, 965 (Mass. 2001) (emphasis added). There, however, the court appears to be discussing the "force" element of constructive force divorced from the "will" requirement. Id. For present purposes, we see no meaningful difference between determining whether the evidence was sufficient to establish that the sexual intercourse was against Martha's will and determining whether it occurred without her consent at the time of intercourse.

clothing to bed that would be difficult for him to remove, that she would turn away from him and pretend to be asleep when he looked into her bedroom in the hope that he would not come in, and that she cried when he performed anal sex.  Furthermore, she testified to telling him at various times she wanted him to stop.

> Q: Did you ever tell your father that you didn't want to have vaginal sex?
>
> A: Yes, I did.
>
> Q:  And did he not do it then?
>
> A: No, he did.
>
> Q: He always did it then anyway?
>
> A: Yes, he did because there was a couple of times that I would say, "I don't want to do this no more," or whatever and he'd -- he would get upset and he'd start screaming at me and he was just -- I don't know.  He was just mean.  I was always scared of him.
>
> Q: So you'd do it then; is that right?
>
> A: Yes.
>
> Q: He'd persuade you to; is that right?
>
> A: Yes.

The evidence need not prove that, during each incident, Martha voiced disapproval and appellant threatened her.  Commonwealth v. Kirkpatrick, 668 N.E.2d 790, 795 (Mass. 1996) (stating, "The Commonwealth was not required to prove that the defendant renewed threats of physical harm every time he approached the victim to establish that the rapes were accomplished by force and against the

-11-

victim's will.") (citations omitted).  There was no evidence she ever welcomed or sought his advances.  In his own trial testimony on direct examination, appellant did not deny Martha's testimony concerning the sexual acts, much less suggest that they had resulted from her solicitation.[5]

The record evidence also establishes that there were threats and violent conduct that a jury could reasonably find to instill fear in the complainant and explain her failure to oppose appellant's advances more actively.  See Caracciola, 569 N.E.2d at 777.  Martha testified she was scared of her father and feared his angry outbursts and the possibility that he would become physically violent if she resisted his assaults.  She testified:

> Q: Now, during all of those [occasions when your father would have sexual intercourse with you] would your father say anything to you?
>
> A: Yeah.  He would say -- he would come in, and after he was done he would ask me, "Are you okay?" or whatever, and I'd be like, "Yeah, I'm fine."  I'd just turn over, you know, because I was scared.  Like if -- like when he'd ask me, "Oh, is it all right tonight?" or whatever, and if I'd say no he would get outraged.  He would get wicked mad and he'd, like, start swearing at me, shut -- slam my door or whatever.  I was scared to say no to him.  So, you know, after -- I mean it happened for so long after -- as the years went on it was just, like, I felt there was no

---

[5]On cross-examination, appellant agreed that when he spoke to Inspector Dillon and later to a Ms. Jenkins, he had denied sexually touching the children.  He was not asked on direct examination whether he had engaged in the conduct testified to by Martha, nor, except as just described, was that issue mentioned by him during his testimony.

-12-

use to stand up. I would get nowhere, you know what I'm saying? It would just happen.

She further testified:

> A: Oh, he would call me names and swearing at me, calling me a whore or, you know, just -- he would swear a lot. When he'd yell he'd swear a lot to me.
>
> Q: And how did that make you feel during that period of time?
>
> A: He'd scare me. Just he made me feel scared and he just, I'd just be quiet and just sit there because if I ever said anything, you know, it would just make him raise his voice even more or, you know.

Appellant would sometimes commit sexual acts upon Martha after drinking alcohol, at which time, she testified, he would get particularly upset if she resisted. Further, the evidence of record provides a reasonable basis for Martha's fears of physical violence. Commonwealth v. Guisti, 747 N.E.2d 673, 678 (Mass. 2001) (stating, "It is sufficient that the Commonwealth prove that the victim reasonably feared that he defendant would harm her if she did not submit."). There was evidence appellant struck Martha's sister, Jenny, in Martha's presence. Jenny was the one daughter who, it was testified, stood up to appellant. Martha testified:

> Q: And on those occasions when [Jenny] would speak up [against appellant] what would happen?
>
> A: My father would get upset with her. Either hit her or scream at her, or you know, "You listen to me," or, you know.

-13-

Q: Now, when you say that he would hit her, where would he hit her?

A: Like, he would, like, slap her in the face

. . .

While appellant used physical force against Martha less frequently, she testified that he had resorted to physical violence against her on three occasions -- one that occurred prior to the episodes of sexual misconduct and two that occurred a couple of months after the sexual misconduct ended. According to this testimony, the first incident occurred while she was in elementary school. Appellant learned that she had lied to him, so he forced her to take her clothes off and stand on a bed as he whipped her with a belt. The latter two incidents of physical violence occurred in 1995 when Martha was twenty-four years old and had begun dating her future husband, Richard. She testified that appellant punched her in the face and violently shoved her inside a van after she had gone to the movies with Richard. In the other incident, according to her testimony, appellant and Martha were in an argument about Richard which resulted in appellant putting his hands to Martha's throat as if to strangle her. While these two latter incidents occurred after appellant had ceased his sexual misconduct with Martha, they fit into a pattern showing appellant's readiness to use force against his daughters if thwarted. From all this evidence, the jury could reasonably conclude that Martha had had

reason to fear physical violence if she took a more active stance in rejecting her father's sexual advances.

In considering whether Martha was intimidated, the jury could also take into account that appellant was her father, that her stepmother was infirm and unable to protect her, and that, even after reaching the age of sixteen, Martha was poorly positioned to stand up to her father's insistent advances. The surrounding circumstances gave appellant a considerable degree of moral and physical control over her. See Caracciola, 569 N.E.2d at 776 (inquiry includes "an examination of the circumstances or fear in which the victim is placed, the impact of those circumstances or fear on the victim's power to resist and the defendant's conduct."). Martha's father appears to have been the dominant figure in the household. Martha's stepmother was often ill. Martha lived with appellant "practically [her] whole life." She began working at his pizza restaurant when she was twelve years old and continued working until she was twenty-four years old. She had no other family in the United States with whom to seek refuge. She testified, "I never had the courage to move out of the house. I never had a job on my own other than working at the restaurant with my family. You know, I didn't have friends . . . ." Appellant's sexual acts with Martha began when she was age twelve -- at a time when she was legally incapable of consenting and could be found by a jury to be both helpless and particularly impressionable. These

facts, together with others previously discussed, could be determined by the factfinder to have impaired Martha's will and ability to resist her father's advances after she had reached the age of legal consent.

Accordingly, like the Appeals Court, we find the record sufficiently establishes that Martha's submissions to appellant were obtained by the power and authority he wielded over her, coupled with her fear of the consequences if she did not submit. Because he dominated both her home and work life, her reluctance to actively resist his conduct did not demonstrate consent but rather could be found to have established that she was powerless to stop him even though the acts were against her will. On this record, the Appeals Court's determination is not objectively unreasonable. Since appellant is unable to point to clear and convincing evidence that the actions were not against Martha's will, the second exception does not apply. 28 U.S.C. § 2254(d).

**Affirmed.**