## COMMONWEALTH vs. ROY DUMAS.

No. 12-P-587.

Worcester. March 7, 2013. - April 24, 2013.

Present: BERRY, SIKORA, & MILKEY, JJ.

*Rape. Indecent Assault and Battery. Practice, Criminal,* Argument by prosecu-
tor, Instructions to jury. *Evidence,* First complaint.

At the trial of indictments charging the defendant with, inter alia, rape of a
child, the victim's expressions of uncertainty as to her age at the time of
the incident went to the weight of the evidence and did not render the
Commonwealth's evidence legally insufficient [537-538]; likewise, the
defendant's threats and the circumstances created by his conduct and
words were sufficient to sustain the convictions of forcible rape [538-539].

At a criminal trial, a statement by the prosecutor, in closing argument, that the
defendant had sent someone to get the victim was a reasonable inference
from the evidence; further, a statement that the victim was afraid for her
life was, at worst, merely excusable hyperbole that was not grounds for
reversal. [540]

At a rape trial, there was no error in the judge's instruction to the jury on
consent and constructive force. [540]

At a rape trial, the defendant was not prejudiced by a violation of the first
complaint doctrine, where much of the testimony complained of was
elicited by the defendant on cross-examination, and where a police offi-
cer's testimony contained none of the substance of the victim's complaints.
[540-541]

INDICTMENTS found and returned in the Superior Court Depart-
ment on May 5 and September 16, 2004.

After consolidation, the cases were tried before *Richard T.
Tucker,* J.

*Robert E. Fox* for the defendant.

*Donna-Marie Haran,* Assistant District Attorney, for the
Commonwealth.

MILKEY, J. Following a jury trial in Superior Court, the
defendant was convicted of rape of a child, G. L. c. 265, § 23;
indecent assault and battery, G. L. c. 265, § 13H; and four

counts of rape, G. L. c. 265, § 22(*b*). On appeal, the defendant argues that the evidence was insufficient to sustain his convictions, that he was prejudiced by errors in the Commonwealth's closing argument and in the jury instructions, and that a violation of the first complaint doctrine created a substantial risk of a miscarriage of justice. We affirm.

*Background.* We briefly summarize the evidence at trial, reserving certain details for later discussion. The defendant's convictions relate to a series of offenses committed against a teenage victim over the span of approximately one year, from early 2003 to early 2004. The victim, a child of Hmong refugees from Laos, testified that at the time of the assaults she practiced a religion called Houplle. Pursuant to the tenets of Houplle, the victim believed that the spirits of her ancestors watched over her and possessed great influence over her life. The victim's testimony indicated that the defendant was aware of her religious beliefs, and that he preyed on those beliefs by telling her that if she did not submit to his sexual demands her ancestors would hurt her and her family.[1] She testified that she believed him, at least in part due to his claim (corroborated by other students at the victim's high school) that he was the leader of a "secret organization" that "only Asians and Native Americans could join," whose purpose was to "help people who were in need."

According to the victim, the defendant presented the assaults to the victim as either "tests" to see if she could join the organization or "penalties" for her misbehavior, and told her that her ancestors would hurt her if she refused to comply or if she told anyone about the organization. As a result, the victim testified, she was afraid to resist the defendant's repeated sexual assaults or to tell anyone what was happening. Eventually the victim confided in a cousin, who convinced her that the defendant could not actually communicate with her ancestors and prevailed upon her to report him to the police.

*Sufficiency.* The defendant argues that the evidence was insufficient to sustain his convictions of rape of a child and forcible rape. We address each in turn, considering "whether, viewing

---

[1] When asked for clarification of the type of harm she feared from her ancestors, the victim testified, "Physically they can hurt me, they can hurt my family."

the evidence in a light most favorable to the Commonwealth, '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Commonwealth v. Cohen (No. 1)*, 456 Mass. 94, 120 (2010), quoting from *Commonwealth v. Latimore*, 378 Mass. 671, 677 (1979).

The rape of a child conviction was based on evidence that the defendant "test[ed the victim's] purity" by digitally penetrating her. The defendant contends that the victim's testimony about her age at the time of this incident was too equivocal to permit a jury to find beyond a reasonable doubt that she had not yet turned sixteen. Contrary to the defendant's assertion, the victim did not testify to "both ages [fifteen and sixteen] almost equally." Instead, she testified that although it was "possible" she had been sixteen, her best recollection was that the incident occurred before her sixteenth birthday. Such "[e]xpressions of uncertainty" in a victim's testimony, "like expressions of certainty, go to the weight of the evidence and are for the jury." *Commonwealth v. Campbell*, 60 Mass. App. Ct. 215, 220 (2003). Any uncertainty in the victim's testimony did not render the Commonwealth's evidence legally insufficient. See *Commonwealth v. Clary*, 388 Mass. 583, 589 (1983). Furthermore, the defendant had ample opportunity to exploit any inconsistencies in the victim's testimony on cross-examination. No "leap of conjecture" was required for the jury to credit the victim's direct testimony that the penetration occurred when she was fifteen. *Commonwealth v. Merry*, 453 Mass. 653, 663 (2009), quoting from *Commonwealth v. Chongarlides*, 62 Mass. App. Ct. 709, 712 (2004). See generally *Commonwealth v. Fitzgerald*, 376 Mass. 402, 410-411 (1978); *Commonwealth v. Plouffe*, 52 Mass. App. Ct. 543, 544-545 (2001).

The defendant also argues that there was insufficient evidence of force to sustain the four rape convictions. At trial, the Commonwealth relied on the theory that the defendant used constructive force to coerce the victim into submitting.[2] See *Commonwealth v. Caracciola*, 409 Mass. 648, 652 (1991). Viewed

---

[2]There also was evidence of actual force. For example, the victim testified that she began to cry loudly when the defendant was sodomizing her in the woods (evidence indicative of lack of consent), and that while he then stopped doing so, he proceeded to yell at her. At a minimum, the presence of such

in the light most favorable to the Commonwealth, the evidence was sufficient. The jury rationally could have concluded that the defendant told the victim, and the victim believed, that if she did not submit to the defendant's "tests" and "penalties" her "ancestors and the spirits . . . [w]ould come and hurt [her]." As a result, the victim was afraid to resist or to tell anyone what was happening. "Those threats and the circumstances created by [the defendant's] conduct and his words are sufficient to constitute the force contemplated by the statute." *Id.* at 652-653.

While it is true that a typical constructive force case involves threats of a more direct and immediate nature than the defendant's threat to impel the victim's ancestors to hurt her, in our view this distinction is not determinative. What matters is that the· defendant's "course of conduct . . . was designed to instill fear in order to achieve his goal." *Commonwealth* v. *Wallace,* 76 Mass. App. Ct. 411, 418 n.11 (2010), citing *Caracciola, supra* at 652-653 & n.7. Where, as here, an adult in a position of authority preys upon the vulnerability of a much younger victim and coerces her into submitting to his sexual advances out of fear for her safety should she refuse, a jury rationally may conclude that "the victim's ability to resist the rape was overborne or negated" by the defendant's conduct, *Commonwealth* v. *Armstrong,* 73 Mass. App. Ct. 245, 255 (2008), and that the rape was therefore "accomplished *by force* and against the victim's will," *ibid.,* quoting from *Caracciola, supra* at 651.[3] See *Commonwealth* v. *Frank,* 51 Mass. App. Ct. 19, 24-25 (2001); *Commonwealth* v. *Wallace, supra* at 418.[4]

evidence reinforces the evidence of constructive force. See *Commonwealth* v. *Wallace,* 76 Mass. App. Ct. 411, 418 (2010).

[3] The docket indicates that the defendant was about forty-seven years old at the time of the first incident. Although his specific age was not entered in evidence, the jury had the opportunity to observe him. The defendant contests any characterization of himself as an authority figure in the victim's life, but the evidence that he portrayed himself as the leader of the "secret organization" into which he purported to induct the victim was uncontroverted.

[4] The cases upon which the defendant relies are readily distinguishable; in neither did the defendant obtain a victim's submission by intentionally putting the victim in fear of the consequences of resistance. See *Commonwealth* v. *Goldenberg,* 338 Mass. 377, 384, cert. denied, 359 U.S. 1001 (1959); *Commonwealth* v. *Feijoo,* 419 Mass. 486, 491-492 (1995).

*Closing argument.* The prosecutor made two statements in his closing argument that the defendant contends were unsupported by the evidence: that the defendant "sent [two other students] to get [the victim]," and that the victim "was afraid for her life." As to the first, the evidence showed that the victim was invited to join the defendant's "secret organization" by another student who claimed to be a member of that organization, and who subsequently brought the victim to meet the defendant and the student's sister, who lived in the defendant's house. Because the defendant claimed to be the leader of the organization, it was a reasonable inference that the organization's members acted at his direction in matters relating to the organization.[5]

With regard to the second statement, the victim testified that she believed her ancestors had "control over [her]," that they physically could hurt her and her family, and that she was afraid as a result of the defendant's threats. The prosecutor's statement that she was afraid "for her life" was at worst "merely 'excusable hyperbole' and is not grounds for reversal." *Commonwealth v. Ortiz*, 463 Mass. 402, 416 (2012), quoting from *Commonwealth v. Silva*, 455 Mass. 503, 515 (2009).

*Other issues.* The defendant's remaining arguments require little discussion. There was no error in the judge's instruction to the jury on consent and constructive force, which tracked the model instruction on rape nearly verbatim and was a correct statement of the law of this Commonwealth. Any suggestion by the defendant that the law thus explicated was created after the rapes occurred is meritless; the law regarding constructive force long has been established. See *Caracciola*, 409 Mass. at 651-652.

Nor is there merit in the defendant's contention that he was prejudiced by a violation of the first complaint doctrine. Much of the testimony now complained of was elicited by the defendant himself on cross-examination. See *Commonwealth v. Morris*, 82 Mass. App. Ct. 427, 439-440 (2012). As for the testimony by a police officer that she met with the victim and drove with her to various locations in Lowell and Tewksbury, some of that testimony may well have been excluded had the defendant lodged

---

[5] Whether one girl or two brought the victim to the defendant's home is immaterial.

Commonwealth *v.* Dumas.

an objection.[6] However, the officer's testimony contained none of the substance of any complaints made by the victim. The defendant is unable to articulate how the fact that police spent time with the victim bolstered her credibility in any appreciable way. There was no substantial risk of a miscarriage of justice. See, e.g., *Commonwealth* v. *Roby*, 462 Mass. 398, 409 (2012); *Commonwealth* v. *Flint*, 81 Mass. App. Ct. 794, 804 (2012).

*Judgments affirmed.*

---

[6]The officer was not an appropriate first complaint witness, and the integrity of the police investigation was not at issue. At oral argument, the Commonwealth was unable to explain what purpose the officer's testimony served.