NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

21-P-450

COMMONWEALTH

vs.

BRYAN RAUSCHER.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a bench trial in the Superior Court, the defendant was found guilty of strangulation or suffocation and two counts of assault and battery on a household member.[1]  On appeal, in his Moffett brief, see Commonwealth v. Moffett, 383 Mass. 201, 208-209 (1981), the defendant argues that he did not freely and voluntarily waive his right to a jury trial and to testify, trial counsel was ineffective, and the victim's testimony was not credible.  We affirm.

Background.  The defendant and the victim were in a dating relationship.  At 5:15 P.M. on December 19, 2018, Beverly police officer William Cargile responded to a noise complaint at the

_____

[1] The Commonwealth dismissed so much of the assault and battery indictments that alleged subsequent offense.  The defendant was found not guilty of a second count of strangulation or suffocation and threatening to commit a crime.

victim's apartment.  The victim told Cargile that there had been a verbal argument but that no physical contact occurred.  Observing no injuries to the victim, Cargile left.  Later that night, the defendant "passed out" after drinking vodka.  During this time, the victim looked at the defendant's phone and discovered messages and photographs from other women.  The victim tried to wake the defendant to no avail.  She eventually threw a glass of water in his face, and the defendant woke up.  He grabbed the victim's throat, slammed her into the floor, punched her in the left eye, placed his forearm on her throat, covered her nose and mouth with his hand and said, "this is how people die."  The victim broke free and ran to her bedroom to call a friend.  The defendant followed the victim upstairs and "proceeded to bear hug" the victim on her bed but continued to strangle her.  The victim was again able to break free and run to her friend's car, and the friend drove her to the police station.  At the station, Cargile observed that the victim's hair was disheveled, she was crying, and that she had a swollen left eye and red left cheek.

Discussion.  1.  Jury trial waiver.  The defendant argues that his jury trial waiver was not free, intelligent, and voluntary.  Because the defendant signed a written jury waiver form and the judge conducted a thorough colloquy, "the sole focus of our review is whether the colloquy has provided an

evidentiary record on which the judge could find the waiver was voluntary and intelligent" (citation omitted). Commonwealth v. Hendricks, 452 Mass. 97, 107-108 (2008). We conclude that it does. The judge explained the constitutional rights that the defendant was waiving and ensured that he had the opportunity to consult with counsel before doing so. See id. at 106-108 & n.5. The judge also inquired about the defendant's age, mental illness and condition, absence of drug or alcohol use, and education. While we understand that the defendant was frustrated about the availability of jury trials during the COVID-19 pandemic, this in and of itself does not render his waiver involuntary and unintelligent.

2. Waiver of right to testify. The defendant next argues that he was "tricked into not testifying" to avoid the admission of evidence of his criminal record. While a defendant's right to testify is fundamental, the "defendant bears the burden of showing by a preponderance of the evidence that his waiver of the right to testify was not valid" (citation omitted). Commonwealth v. Garvin, 456 Mass. 778, 786 (2010). Here, the judge conducted a detailed colloquy, ensured that the defendant consulted with his attorney, and was satisfied with that advice. That the defendant complains that his criminal record was a factor in his decision not to testify shows that the defendant understood the consequences of his decision. See Commonwealth

v. McGillivary, 78 Mass. App. Ct. 644, 651 (2011) (defendant reasonably accepted attorney advice not to testify "because such testimony might open the door to evidence of prior convictions").

3. Ineffective assistance of counsel. The defendant argues that his trial counsel was not properly prepared for trial and thus constitutionally ineffective for failing to (1) meet with him in person before trial; and (2) call the victim's friend as a witness. "[T]he preferred method for raising a claim of ineffective assistance of counsel is through a motion for a new trial." Commonwealth v. Zinser, 446 Mass. 807, 810 (2006). Here, it is presented in its weakest form, as it is raised for the first time on appeal on the trial record alone. See Commonwealth v. Peloquin, 437 Mass. 204, 210 n.5 (2002). Generally, to prevail on an ineffective assistance of counsel claim, a defendant must demonstrate that counsel's "serious incompetency, inefficiency, or inattention . . . has likely deprived the defendant of an otherwise available, substantial ground of defence." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).

The record demonstrates that trial counsel was well prepared and tried a thoughtful and deliberate case, notwithstanding that he was unable to visit the defendant in person due to COVID-19 restrictions. Specifically, trial

4

counsel vigorously cross-examined the victim, eliciting weaknesses in her account of the events. Likewise, through cross-examination, he highlighted deficiencies in the police investigation. Notably, trial counsel's efforts resulted in not guilty verdicts on two of the indictments.

As to the failure to call the victim's friend as a witness, the defendant fails to identify what information this witness would have provided that would have been favorable to him. See Commonwealth v. Watkins, 473 Mass. 222, 240 (2015) ("To establish ineffective assistance of counsel based on a failure to call additional witnesses, a defendant must show that the purported testimony would have been relevant or helpful" [quotation and citation omitted]). Trial counsel was not ineffective.

4. Victim's testimony. Finally, the defendant claims that the victim's testimony was not credible because of inconsistencies between her testimony at an initial hearing and at trial. However, it is the province of the fact finder to determine the weight and credibility of evidence. See Commonwealth v. Tavares, 484 Mass. 650, 656 (2020). To the extent that the defendant's argument can be construed as a sufficiency of the evidence argument, it fails for the same reason. See Commonwealth v. Dumas, 83 Mass. App. Ct. 536, 538

5

(2013) (inconsistencies "in the victim's testimony did not render the Commonwealth's evidence legally insufficient").

Judgments affirmed.

By the Court (Meade, Blake & Brennan, JJ.[2]),

*Joseph F. Stanton*

Clerk

Entered:  May 18, 2023.

---

[2] The panelists are listed in order of seniority.