## COMMONWEALTH *vs.* JOHN WALLACE.

No. 08-P-985.

Middlesex. November 9, 2009. - March 4, 2010.

Present: KAFKER, WOLOHOJIAN, & MILKEY, JJ.

*Rape. Evidence,* First complaint. *Consent. Intoxication. Practice, Criminal,* Instructions to jury, Sentence.

At the trial of indictments charging rape of a child and rape, a Superior Court judge did not abuse her discretion in allowing the victim's brother to testify as a first complaint witness, where the victim's statement to the brother that the defendant had engaged in inappropriate sex with the victim rose to the level of a complaint, and the brother's memory of the conversation, which was inconsistent with that of the victim, went to the weight of the evidence rather than its admissibility. [414-415]

At the trial of indictments charging rape of a child and rape, a limiting instruction given by the judge, at the defendant's request, that the jury could consider only with respect to the indictment charging rape of a child evidence regarding an occasion when the defendant sexually assaulted the victim after getting him sufficiently intoxicated on hard liquor that he could not have consented (although the evidence was inconclusive whether the victim was sixteen years of age when the incident took place) did not create a substantial risk of a miscarriage of justice, where the limiting instruction was not inconsistent with the weight of the evidence, and the evidence of other sexual acts taking place before the victim was sixteen rendered the testimony regarding this additional incident merely cumulative. [415-417]

At the trial of indictments charging, inter alia, rape, evidence that the defendant compelled the victim to submit to sex by force and against his will was sufficient to sustain the defendant's conviction, where, viewing the events in light of the history of the victim's relationship with the defendant and the defendant's predatory behavior, there was evidence that the defendant had been raping the victim for many years, starting when the victim was as young as eleven, and the victim testified that he feared the consequences of resisting the defendant's sexual advances. [417-418]

Resentencing was required on a criminal defendant's convictions of rape of a child and rape, where the trial judge's explanation of her reliance on allegations, detailed in a police report, of similar conduct with other children for which the defendant had not been charged or tried did not meet the rigorous standard required by case law that the judge demonstrate she considered the uncharged conduct only for a proper purpose. [419-420]

INDICTMENTS found and returned in the Superior Court Department on September 7, 2006.

The cases were tried before *Sandra L. Hamlin*, J.

*Eric Tennen (John G. Swomley* with him) for the defendant.

*Patrick G. Fitzgerald*, Assistant District Attorney, for the Commonwealth.

MILKEY, J. After a jury trial in Superior Court, the defendant was convicted of rape of a child, G. L. c. 265, § 23 (first indictment), and rape, G. L. c. 265, § 22(*b*) (second indictment). The two charges involved a single victim, to whom we shall refer as "Thomas" (a pseudonym). The first indictment was for the period before Thomas turned sixteen, and the second was for the period after. On the first indictment, the defendant was sentenced to from ten to twelve years in State prison, and on the second, he received ten years of probation from and after his prison sentence on the first offense. We affirm the convictions but remand for resentencing in light of an ambiguity presented by the judge's explanation of the sentence that she imposed.

*Background.* Based on the evidence, the jury could have found the following facts.

*How the defendant met the victim.* When Thomas was about ten years old, he began delivering newspapers in his neighborhood, including to the home of the defendant's mother. At the time, Thomas was about four feet, eleven inches in height and weighed approximately eighty or ninety pounds. After Thomas expressed an interest in motorcycles and dirt bikes to the defendant's mother, she introduced him to her son, who lived in a basement apartment in her house. The defendant, who was substantially older and bigger than Thomas,[1] always had motorcycles, dirt bikes, and exotic cars in his mother's back yard and garage. Thomas began visiting the defendant several times a week to watch him fix engines, to learn about motorcycles and dirt bikes,

---

[1] The defendant was approximately five feet, seven or eight inches tall and weighed approximately 200 pounds. He refused to tell Thomas his age, but Thomas testified that the defendant once "possibly" said "around thirty" or "something to that effect." The jury had the opportunity to observe the defendant at trial, and it is plain, in any event, that the jury could have concluded that the defendant was substantially older than Thomas given that he could already drive and lived semi-independently in a basement apartment when Thomas was only ten or eleven.

and to watch television. They spent significant time together in the yard and garage, as well in the basement apartment. The defendant also took Thomas on various outings such as to a restaurant, to an auto parts store, and to a bike show. Thomas viewed the defendant as a friend and "like an uncle." The defendant in fact asked Thomas to call him "Uncle John."

*The sexual assaults.* The defendant began sexually assaulting Thomas when Thomas was "about" eleven years old. With the exception of an incident when the defendant got Thomas drunk on hard liquor (further details of which are described below), the assaults followed the same pattern. Often during their visits, Thomas would end up lying on the defendant's waterbed, either because the defendant had urged him to do so if he was tired, or as a result of the defendant's pushing him on to the bed while they were wrestling.[2] As part of their wrestling or otherwise, the defendant would sometimes "pin" Thomas down on the bed. The defendant would turn off the lights and television, lock the apartment door, and stick a pillow over Thomas's face. He would then remove Thomas's pants and fellate him.[3] On occasions when Thomas had fallen asleep on the bed, he would wake to find himself being sexually assaulted.

Alcohol was a regular part of the pattern, with the defendant providing Thomas (who was at all times underage) with beers. During the assaults, the victim would remain motionless and mentally detach himself from what was occurring. He thought the assaults were his fault, and he feared the defendant, given his belief that the defendant was a police officer and had a bad temper.[4]

During this period, Thomas was experiencing great emotional distress. He was often angry, especially at himself, feeling that "everything was happening because [he] was causing it to

---

[2] Thomas himself described the defendant's actions as "forcing" him on to the bed.

[3] On more than one occasion, the defendant would place Thomas's hand on his penis, or rub his penis against Thomas's leg. The rape charges were based on the oral sex, not on these separate touchings.

[4] It was never established that the defendant was a police officer, but Thomas believed that he was, or at least had some other association with the police, based on Thomas's knowledge that the defendant possessed a badge and guns. Thomas's belief that the defendant had a bad temper was based on his observing the defendant's interactions with third parties.

happen." He would sometimes run away from home, and on one such occasion, Thomas's brother tracked him down to ask what was wrong. As the brother recounted in testimony discussed further below, Thomas confided that the defendant had "done something inappropriate sexually" on multiple occasions at the defendant's home.

In the first few years, the sexual assaults would occur "probably two, three times a month." After he turned sixteen, Thomas would still visit the defendant's home, although less frequently. Approximately once a month, the defendant continued to fellate him. Thomas did not do anything to stop it because he was "scared" and "didn't want anything to happen to [him]," and also because he thought the defendant was his friend and that "things were happening because they were [his] fault."

The sexual assaults ceased after an incident when Thomas was "about eighteen." Specifically, when the defendant started massaging Thomas's shoulders, Thomas physically pushed the defendant away and verbally expressed his displeasure· at the advance. Thomas reported the abuse to the police approximately nine years later, and he saw the defendant in the interim only once or twice.

*Discussion. Rape of a child.* A conviction of rape of a child, more commonly known as "statutory rape," does not require proof that force was used or consent withheld. See G. L. c. 265, § 23; *Commonwealth* v. *Miller*, 385 Mass. 521, 522 (1982) (discussing the elements of statutory rape). In the face of strong evidence that the defendant sexually assaulted Thomas on numerous occasions before he turned sixteen, the defendant raises just two limited arguments with regard to the charge of rape of a child. Both arguments fail.

1. *First complaint witness.* Although the Commonwealth's case was based almost entirely on Thomas's testimony, the Commonwealth did call a number of other witnesses. One of those witnesses was Thomas's brother, who provided the testimony noted above as a "first complaint" witness. See *Commonwealth* v. *King*, 445 Mass. 217, 218-219 (2005) ("the recipient of a complainant's first complaint of an alleged sexual assault may testify about the fact of the first complaint and the circumstances surrounding the making of that first complaint"). The defendant argues that the brother should not have been allowed to testify as

a first complaint witness because what Thomas told his brother did not rise to the level of a "complaint." In support of this argument, the defendant highlights Thomas's own recollection of the conversation. In fact, when initially interviewed by the police, Thomas could not remember the conversation with his brother at all. Later, he remembered merely having "hinted around" the issue in the encounter, and that he "never came out and told [his brother] straight out this is what's happening" but told the brother only that "bad things" had occurred.

The trial judge did not abuse her discretion in allowing Thomas's brother to testify as a first complaint witness. Because the brother remembers Thomas stating that the defendant had engaged in inappropriate sex with him, those statements *did* rise to the level of a complaint. Compare *Commonwealth* v. *Murungu*, 450 Mass. 441, 446 (2008) (a conversation does not constitute a "complaint" for purposes of the first complaint rule "when, for example, the victim expresses to that person unhappiness, upset or other such feelings, but does not actually state that she has been sexually assaulted"). The fact that Thomas remembered the conversation somewhat differently goes to the weight of the evidence, not to its admissibility. The inconsistent recollections of the conversation provided fodder for cross-examination, and defense counsel did not miss the opportunity to exploit it. In the end, having had the opportunity to observe Thomas on the stand over two days, the jury plainly found his testimony sufficiently credible to convict the defendant.[5]

2. *The incident at the home of the defendant's friend.* There

---

[5]The defendant also points out that when Thomas was first interviewed by the police, he identified a college friend, and not his brother, as the first person in whom he confided. The college friend does not remember the conversation, and therefore his testimony could not have bolstered the Commonwealth's case as a first complaint witness. The defendant argues that by substituting the brother for the college friend as the first complaint witness, the Commonwealth was improperly "pick[ing] and choos[ing]" among various complaint witnesses to locate one "with the most complete memory, the one to whom the complainant related the most details, or the one who is likely to be the most effective witness." *Commonwealth* v. *Murungu*, 450 Mass. at 446. But it is uncontested that Thomas's conversation with his brother took place earlier in time than the conversation between Thomas and his college friend. Therefore, so long as Thomas's statements to his brother rose to the level of a "complaint" (which we have concluded they do), then that conversation was the first complaint evidence. In other words, the Commonwealth was

was one occasion when the defendant sexually assaulted Thomas after getting him drunk on hard liquor. Thomas was sufficiently intoxicated that he legally could not have provided his consent.[6] The evidence was inconclusive about whether Thomas had turned sixteen at the time.[7] This doubt posed a strategic conundrum for the parties. The younger that Thomas was at the time, the worse the defendant's behavior. However, any evidence that Thomas was too drunk to give his consent was legally irrelevant prior to Thomas's turning sixteen. If, on the other hand, the incident took place after Thomas's sixteenth birthday, then the evidence concerning Thomas's intoxication provided strong evidence that the defendant raped Thomas after he turned sixteen. After reviewing the issue over a weekend, defense counsel requested that the judge instruct the jury that they could consider the incident only with respect to the first indictment (rape of a child). The judge gave the limiting instruction the defendant requested, and the defendant now claims that this worked a miscarriage of justice by taking the "when did it happen" issue out of the hands of the jury.

Given that any error here was of the defendant's own making, there is doubt that he can even raise it. *Commonwealth* v. *Knight*, 37 Mass. App. Ct. 92, 99-100 & n.2 (1994) (questioning whether "the issue is reviewable at all" when "the challenged instruction was given at the specific request of defense counsel at trial"). In any event, we conclude that the limiting instruction did not create a substantial risk of a miscarriage of

not picking and choosing; the "choice" was determined by the facts. Moreover, it bears noting again that the Commonwealth hardly escaped having to address the fact that Thomas's recollection of such a conversation with his college friend was inconsistent with the friend's memory, an opening that defense counsel sought to exploit at trial.

[6]See *Commonwealth* v. *Blache*, 450 Mass. 583, 594-595 & n.19 (2008) (Commonwealth can prove lack of consent element of rape charge by demonstrating "that the complainant was so impaired as to be incapable of consenting" and "that the defendant knew, or reasonably should have known, that the complainant's condition rendered her [or him] incapable of consenting").

[7]Thomas testified both that he was "about" sixteen, and that he "could have been fourteen or fifteen" (the time frame Thomas gave when he was initially interviewed). His recollection was linked to his mode of transportation at the time (a moped), making him younger than sixteen and one-half, the age at which he got his driver's license.

justice. *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). First, the evidence that Thomas had not yet turned sixteen when the incident occurred was, if anything, more robust, so the judge's limiting instruction was not inconsistent with the weight of the evidence. Second, the evidence of other sexual acts taking place before Thomas turned sixteen was strong. The testimony regarding the additional incident was therefore merely cumulative.

*Rape.* In order to convict one of raping another, the Commonwealth must prove that the defendant "compel[led] such person to submit by force and against his will, or compel[led] such person to submit by threat of bodily injury . . . ." G. L. c. 265, § 22, as appearing in St. 1980, c. 459, § 6. See generally *Commonwealth* v. *Lopez*, 433 Mass. 722, 726-727 (2001) (discussing the elements of rape). The defendant argues that his motion for a required finding on the second indictment should have been allowed because there was insufficient proof that he used "force" to compel Thomas to have sex after Thomas turned sixteen. We conclude that the evidence of "force" was sufficient to send the issue to the jury, and we therefore uphold the conviction.

To prove that a defendant used "force" to compel sex, the Commonwealth may rely on actual force, threatened force, or "constructive force." See *Commonwealth* v. *Caracciola*, 409 Mass. 648, 651-653 (1991).[8] In addition, in situations where the victim is intoxicated, asleep, or otherwise incapable of providing consent, the only force that need be shown is the force necessary to accomplish the act. See *Commonwealth* v. *Blache*, 450 Mass. 583, 591-592 (2008). The Commonwealth presented its case to the jury by arguing that, based on the "totality of the relationship," the jury could conclude that the defendant exercised his "power, influence, and control" to "overcome" the victim's will.[9]

We conclude that there was sufficient proof that the defendant compelled Thomas to submit to sex by "force" and against

[8]In *Caracciola*, the trial court had dismissed a rape indictment for insufficient proof that "force" had been used, even though the defendant told the victim he was a police officer, wore a gun, ordered her into his car, and threatened to imprison her if she did not have sex with him. The Supreme Judicial Court reversed, concluding that there was sufficient evidence of "constructive force" for the case go to a jury. *Id.* at 651-654.

[9]The judge provided a jury instruction on "constructive force" that was

his will. The Commonwealth persuasively argues that the events must be viewed in light of the history of their relationship and the defendant's predatory behavior. By the time Thomas had turned sixteen, the defendant had been raping Thomas for many years, starting when Thomas was as young as eleven.[10] Further, the jurors were entitled to credit Thomas's testimony that he feared the consequences of resisting the defendant's sexual advances (even if the specific consequences he feared were not spelled out).[11] We also note the presence of many individual factors that collectively support the Commonwealth's theory of "force": the defendant's pushing the still-young victim onto the bed and pinning him there, the locking of the door, the pillow over the head, and the defendant's regularly plying Thomas with alcohol. In sum, we believe that the evidence that the defendant used "force" after Thomas turned sixteen was legally sufficient for the question to go to the jury.

similar to the one we quoted with approval in *Commonwealth* v. *Moniz*, 43 Mass. App. Ct. 913 (1997), a case involving forcible rape of a child. The defendant objected to this instruction below, but makes no challenge on appeal.

[10]The fact that the defendant had begun raping Thomas when he was as young as eleven makes this case markedly different from *Commonwealth* v. *Feijoo*, 419 Mass. 486, 491-492 (1995), where the Supreme Judicial Court found proof of "constructive force" insufficient despite evidence that the defendant had recounted to the complainant "several instances in which the defendant had resorted to violence and threats of violence." *Id.* at 491. In *Feijoo*, a karate teacher pressured his seventeen year old student to submit to sex by telling the student that he wanted him "to be his protégé and take over his thirteen karate schools and eight million dollars worth of assets" and that in order to do so he needed to " 'form a bond' with the defendant." *Ibid.* The court reversed the rape conviction on appeal, concluding that "the jury would not have been warranted in finding that [the complainant] was afraid or that he submitted to the defendant because the defendant was intimidating rather than submitting for another reason such as hoped for benefits as the defendant's protégé." *Id.* at 492.

[11]As noted above, Thomas asserted that his fear was based on his belief that the defendant had some connection to the police department and that the defendant had a temper. We disagree with the defendant's argument that the proof was insufficient. Even if Thomas had difficulty articulating the basis of his fear, there was evidence from which the jury could have found that the defendant's course of conduct — including his grooming the victim by repeatedly raping him as a child — was designed to instill fear in order to achieve his goal. Compare *Commonwealth* v. *Caracciola*, 409 Mass. at 652-653 & n.7. See *id.* at 651, quoting from *Commonwealth* v. *Sherry*, 386 Mass. 682, 688 (1982) ("[T]he jury is entitled to 'consider the entire sequence of events and acts of [the] defendant[] as it affected the victim's ability to resist' ").

*Sentencing.* At the sentencing phase, the Commonwealth submitted a police report that detailed allegations that the defendant had previously engaged in similar conduct with other children. The defendant was not charged or tried for that conduct. The police report also included a statement taken from the defendant that he allowed boys to sleep in his bed. When she imposed sentence, the judge explained that she considered, and in part relied upon, the police report:

> "I've considered all of the appropriate matters, and I in particular focused on not just the police report that was attached to the Commonwealth's memo but the statement that the defendant himself gave to the police . . . [.] I'm particularly mindful of that particular statement, although it's not the sole reason for the court imposing a sentence."

The defendant argues that this statement demonstrates that the judge inappropriately punished him for uncharged conduct.[12]

Although a trial judge is not permitted to punish someone for uncharged conduct, such conduct "may be considered as bearing on 'the defendant's character and his amenability to rehabilitation.' " *Commonwealth* v. *Stuckich,* 450 Mass. 449, 461-462 (2008), quoting from *Commonwealth* v. *Goodwin,* 414 Mass. 88, 93 (1993). Where the trial judge considers uncharged conduct, it is imperative that she demonstrate that she did so only for a proper purpose. *Commonwealth* v. *Stuckich, supra* at 462. "Ambiguity as to whether a defendant has been improperly sentenced as punishment for other offenses creates a sufficient concern about the appearance of justice that resentencing is required." *Commonwealth* v. *Henriquez,* 440 Mass. 1015, 1016 (2003).

We conclude that resentencing is required here, because the judge's explanation of her reliance on uncharged conduct does not meet the rigorous standard required by the case law. We

---

[12]There is no merit to the Commonwealth's argument that we lack jurisdiction to consider this issue. The very case on which the Commonwealth relies notes that appellate courts can generally review claims that a defendant was sentenced for things "other than that for which he was convicted." *Commonwealth* v. *McCravy,* 430 Mass. 758, 767 (2000). Further, although the defendant might have pressed for clarification from the judge below, we do not view his failure to do so as foreclosing his ability to obtain appellate review.

also conclude, however, that reassignment of the case to a different judge is neither necessary nor advisable. See *ibid.* (setting forth the considerations for deciding when reassignment should be ordered). In our view, the judge likely made an inadvertent "slip of the tongue" when she suggested that she relied primarily on the uncharged conduct (rather than on the evidence on which the jury convicted the defendant).[13] In addition, the trial judge is already quite familiar with the facts of the case and the basis of the jury verdict, while a new judge would have to start from scratch. Although this fact does not alone compel keeping the case with the same judge, "the interest in avoiding waste and duplication" is a factor that properly can be considered. *Ibid.*

*Conclusion.* We affirm the convictions but vacate the sentences and remand the case for resentencing before the trial judge. Accordingly, the verdicts stand, the judgments are vacated, and the case is remanded to the Superior Court judge for resentencing.

*So ordered.*

---

[13]Elsewhere in her explanation of the sentence she indicated an awareness "of the parameters that are appropriate to consider in sentencing."