COMMONWEALTH *vs.* THOMAS NEWCOMB.

No. 10-P-1369.

Middlesex. May 5, 2011. - September 28, 2011.

Present: CYPHER, BROWN, & HANLON, JJ.

*Rape. Grand Jury. Limitations, Statute of. Evidence,* Grand jury proceedings, Prior misconduct.

At the trial of indictments charging the defendant with the rape of his daughter, the judge did not err in denying the defendant's motion for required findings of not guilty, where the evidence of a prior pattern of repeated sexual assaults by the defendant upon the victim when she was a child, combined with the victim's statement that the assaults always happened the same way, permitted an inference that the current charges involving the victim (who was an adult at the time at issue) were accomplished by constructive force and against the will of the victim. [521-526]

There was no merit to the allegation of a criminal defendant convicted of rape that the evidence before the grand jury was insufficient to establish force and lack of consent. [526]

The statute of limitations did not operate to bar a criminal defendant's prosecution for rape. [526]

At the trial of indictments charging rape, the judge acted well within his discretion in admitting evidence relating to an earlier rape charge involving the defendant and the same victim, where the evidence was relevant to show a pattern of conduct, the existence of the same passion or emotion at the time in issue, and a full picture of the defendant's entire relationship with the victim, which in turn was relevant to proving the element of force. [526-527]

INDICTMENTS found and returned in the Superior Court Department on September 30, 2008.

Pretrial motions to dismiss were heard by *Geraldine S. Hines*, J., and *S. Jane Haggerty*, J.; a motion to suppress evidence was heard by *Haggerty*, J.; and the cases were heard by *Kathe M. Tuttman*, J.

*Thomas D. Frothingham* for the defendant.

*Katharine B. Folger*, Assistant District Attorney (*Marguerite T. Grant*, Assistant District Attorney, with her) for the Commonwealth.

Brown, J. In 2010, following a jury-waived trial, the defendant was found guilty on two indictments charging him with rape of his adult daughter in 1993 and 1996, respectively. See G. L. c. 265, § 22(b).

On appeal, the defendant argues that the trial judge erred in denying his motion for a required finding of not guilty because there was insufficient evidence to convict him. The defendant also argues that his pretrial motion to dismiss should have been allowed because the evidence before the grand jury was insufficient to establish force and lack of consent; that his pretrial motion to dismiss the 1993 rape charge should have been allowed on the ground that the charge was time barred; and that evidence related to a 1990 incident should have been excluded because it was unduly prejudicial and constituted impermissible propensity evidence.[1]

We present the essential facts in the light most favorable to the Commonwealth. The victim was the defendant's adult biological daughter, Angela.[2] In 2008, Lowell police Detective Greg Hudon received information that the defendant fathered two children, Catelyn and Donald, with the victim.[3] At the time these allegations came to light, the police were aware of a prior conviction[4] in which the defendant had been accused of fathering the victim's only other child, Beth, in 1989 (the year of conception), when the victim was fifteen years old.[5] The two

---

[1] Sometime in about April, 1989, when the victim was fifteen years old, she became pregnant with the defendant's child. On January 26, 1990, about two weeks before her sixteenth birthday, she gave birth to her first child, Beth (a pseudonym). The victim testified that she remained at home with her parents after Beth was born, and they helped her care for her child.

[2] We use pseudonyms for the victim and her children.

[3] Catelyn was conceived in 1993, when the victim was nineteen years old, and born in August, 1994, when the victim was twenty years old. Donald was conceived in 1996, when the victim was twenty-two years old, and born in August, 1997, when the victim was twenty-three years old.

[4] A complaint for rape and incest was issued in January, 1990, after Beth was born. On September 14, 1990, the defendant pleaded guilty to so much of the charges as alleged indecent assault and battery, and he received a suspended sentence.

[5] On or about March 19, 1990, the then-denominated Department of Social Services (DSS) was alerted to the potential sexual abuse of the victim. During an interview with Zevorah Ortega-Bagni, a supervisor at DSS, the defendant admitted to "long standing alcoholism" and that his disease had progressed to

rapes at issue in this appeal relate solely to the two younger children.

The victim, who was born on February 6, 1974, was thirty-five when she testified at trial and the children who are the subject of the indictments were twelve and fifteen years old, respectively. The victim said that throughout her life, the defendant struggled with alcoholism, and when he drank, he drank to excess. The victim explained that during her childhood, including high school, "[t]here would be a lot of mental abuse when he came home, towards my mother." The defendant would be angry, yelling, and accusing the victim's mother of being interested in other men. The victim was afraid the defendant would hurt her mother, because "when someone is drunk, you don't know what they're capable of." The victim, like her mother, was also the recipient of the defendant's drunken tirades, while her two brothers were never similarly rebuked.

The defendant's principal argument on appeal is that there was insufficient evidence for the judge to find him guilty of rape under the Commonwealth's theory of constructive force or that the victim was incapable of providing consent. "Proof of the force element of rape . . . may be established by physical force or constructive force." *Commonwealth* v. *Armstrong*, 73 Mass. App. Ct. 245, 254 (2008). Constructive force may be "by threatening words or gestures and operates on the mind" to instill fear in the victim in order for the defendant to achieve his goal. *Commonwealth* v. *Caracciola*, 409 Mass. 648, 652 (1991), quoting from *Commonwealth* v. *Novicki*, 324 Mass. 461, 467 (1949). Cf. *Commonwealth* v. *Feijoo*, 419 Mass. 486, 491-492 (1995). Stated differently, there must be proof that the victim was afraid or that she submitted to the defendant because his conduct intimidated her. See *Commonwealth* v. *Caracciola*, *supra* at 654.

---

frequent blackouts. At an interview the next day, the defendant admitted to Ortega-Bagni that he began having sexual intercourse with his daughter about two years earlier and had had sex with her two to three times a month since that time. The defendant also admitted that he found it very difficult to nearly impossible not to give in to his urges or desires for sex with his daughter. According to the defendant, the victim always remained passive and always turned her head away in the direction of the door or an opposite wall. The sex ended after the defendant ejaculated.

At trial, the victim acknowledged that sexual intercourse with the defendant always followed the same pattern.[6] She admitted that the defendant began having sexual intercourse with her when she was thirteen or fourteen years old. The victim acknowledged that "it always happened the same way." The defendant's "pattern" would be to come home drunk in a "nasty, fresh" mood. The defendant would then have sexual intercourse with her in the living room of the family home while her mother and two younger brothers were either asleep or her brothers were out for the evening.[7]

The Commonwealth maintains on appeal, as it did below, that this evidence permits the inference that every act of intercourse the victim had with the defendant followed the same pattern, even the charged conduct that occurred in 1993 and 1996, and demonstrates that the sexual intercourse was accomplished with constructive force.

According to the Commonwealth, that pattern was one that included the defendant's description of the victim as passively accepting his advances while she looked away, as well as the victim's assessment of the defendant as always drunk, nasty, and fresh. The victim testified she was afraid of the defendant when he was drunk. It is also significant that the sexual assaults began when the defendant was an authority figure and the victim was in his care, and was combined with the additional advantage he gained from being about twenty years older than the young female victim and, thus, likely stronger and larger. See generally *Commonwealth* v. *Armstrong*, 73 Mass. App. Ct. at 255-256.

The Commonwealth argues that the victim's having been thus inculcated to submit to the defendant's advances, his impregnation of her when she was only fifteen years old, and the subsequent birth of their child perpetuated the defendant's control over her. At a time when the victim developmentally should have been moving towards independence, the defendant

[6]The victim was an extremely reluctant witness, acknowledging on the stand that she did not want to testify in this case.

[7]Until the indictments were returned in this case, the victim and her children lived with her parents. She moved in with her brother in 2008, after the indictments were returned.

imposed circumstances that guaranteed her dependence on him. Without support from her family, the victim had no resources to support herself or her infant, Beth. Having secured control over the victim, the defendant was able to continue to sexually assault her. This environment, in combination with the victim's testimony that every act of intercourse with the defendant followed the same pattern — namely, passive acquiescence to the defendant who was drunk and created an aura of fear, albeit for her mother — permits an inference that the charged conduct that occurred in 1993 and 1996 was accomplished in precisely the same circumstances that demonstrated constructive force when she was fourteen. Those circumstances included a fear of the defendant that was never dissipated because her ability to separate from her father was compromised by him. See, e.g., *Commonwealth* v. *Kirkpatrick*, 423 Mass. 436, 444 (1996) (Commonwealth not required to prove that defendant renewed threats of physical harm every time he approached nine year old victim to establish that rapes accomplished by force and against victim's will). This conclusion is bolstered by the defendant's startling admission to a DSS supervisor, see note 5, *supra*, that he found it "nearly impossible" not to give in to his urges or desire for sex with his daughter.

While admittedly the victim was no longer a child when the charged acts occurred, Massachusetts decisional law has recognized that sexual conduct involving a young adult may well constitute rape because of what occurred before the victim matured. In *Commonwealth* v. *Wallace*, 76 Mass. App. Ct. 411 (2010), a case involving a young adult victim, the court considered whether the evidence was sufficient to establish constructive force in a rape charge brought under G. L. c. 265, § 22(*b*). The defendant, Wallace, befriended the victim, a neighborhood boy, when the victim was ten years old. The sexual assaults began when the victim was eleven and generally followed the same pattern. *Id.* at 413. The defendant would push or wrestle the victim onto his bed, turn off the lights and television, lock the apartment door, put a pillow over the victim's head, and fellate him. *Ibid.*

In *Wallace*, during the first few years of the victim's abuse, the assaults occurred two or three times a month. *Id.* at 414.

After he turned sixteen, the victim would still visit the defendant, although less frequently, and about once a month the defendant continued to fellate him. *Ibid.* On appeal, the defendant challenged, among other things, the indictment covering the assaults that occurred after the victim turned sixteen. The victim did not do anything to stop the attacks because he was scared: he had observed the defendant's bad temper with third persons, and he thought the defendant was associated with the police. *Id.* at 413-414. He also thought the defendant was his friend and that the assaults were his fault. *Id.* at 414.

The court in *Wallace* reasoned that "the events must be viewed in light of the history of [the victim's and defendant's] relationship and the defendant's predatory behavior. By the time [the victim] had turned sixteen, the defendant had been raping [the victim] for many years, starting when [the victim] was as young as eleven." *Id.* at 418. In addition, the victim testified "that he feared the consequences of resisting the defendant's sexual advances (even if the specific consequences he feared were not spelled out)." *Ibid.* The court reasoned that the evidence permitted the inference that "the defendant's course of conduct — including his grooming the victim by repeatedly raping him as a child — was designed to instill fear in order to achieve his goal." *Id.* at 418 n.11.

Here, the evidence of a prior pattern of repeated sexual assaults by the defendant upon the victim when she was a child, combined with the victim's statement that the assaults always happened the same way, permit an inference that current charges involving the victim (who was an adult at the time at issue in these charges) were accomplished by constructive force and against the will of the victim. Interwoven with this evidence was the pattern of childhood assaults. It could reasonably be inferred that these childhood assaults rendered the victim incapable of consenting to sexual intercourse with the defendant, and therefore, the only force that need be shown is the force necessary to accomplish the act.

To the extent that the evidence suggested that the victim submitted to the defendant's advances because he was drunk, the evidence that as a nineteen year old woman she was threatened

by this behavior is apparent.[8] Based on the victim's testimony that she was afraid of the defendant when she was in high school and he came home drunk, ostensibly because of what he might do to her mother, the fact finder reasonably could conclude that the victim's fear did not abate.

On this record the evidence permits us to conclude that the defendant's demeanor or conduct, to which the victim was exposed in 1990, continued and that the defendant held the same sway on the victim three years later, even though she had reached the age of maturity and donned adult responsibilities. The same reasoning applies to the 1996 offense. Although the evidence shows that even as the victim got older and was far more enmeshed in society, had graduated from high school in 1992, immediately obtained employment outside of the home, and continued to work when she enrolled in community college a year later, the implicit determination of constructive force is manifest and reasonable. By the time she was nineteen years old, in 1993, she was as dependent and as sheltered as she had been at the age of fifteen.

The Commonwealth's second argument, distilled to its essence, suggests that the prior pattern of incest rendered the victim incapable of consenting to the defendant's sexual assaults and, therefore, the only force that need be shown is the force necessary to accomplish the act. See *Commonwealth* v. *Burke*, 105 Mass. 376, 380-381 (1870). Deciding as we do, we thus have no occasion to discuss whether a pattern of incest may, with or without expert testimony, be a component of the element of force required to accomplish the rape of an adult victim. See *Commonwealth* v. *Wallace*, 76 Mass. App. Ct. at 418 n.11. Contrast *State* v. *Schaim*, 65 Ohio St. 3d 51, 55 (1992) (pattern of incest will not substitute for element of force where State introduces no evidence that adult victim believed defendant might use physical force against her).

In sum, the circumstances presented here are similar to those present in *Commonwealth* v. *Wallace, supra* at 418 (defendant's unbroken course of conduct of regularly raping victim as a child could be viewed as designed to instill fear in victim).

---

[8] We acknowledge that there was no direct testimony of ongoing abuse in the three years preceding the 1993 incident.

Contrast *Commonwealth* v. *Feijoo*, 419 Mass. at 492 (seventeen year old victim indicated he submitted to defendant to obtain benefit, not out of fear). Here, as in *Wallace, supra,* the abuse was inflicted over a period of years by a defendant who was an authority figure and person of trust in the victim's life. Moreover, the victim here, as in *Wallace,* articulated somewhat amorphous fear of the perpetrator.[9]

*Other issues.* (a) *Grand jury evidence.* The motion judge properly denied the motion to dismiss the indictments, because the evidence presented to the grand jury consisted of essentially the same evidence presented at trial, and therefore it was sufficient to meet the standard set forth in *Commonwealth* v. *McCarthy*, 385 Mass. 160, 163 (1982).

(b) *Statute of limitations.* Contrary to the defendant's claim, the 1993 charge was not time barred because the statute of limitations had not run when the limitation period applicable to rape was extended on February 8, 1988, from six years to ten years, and again on May 23, 1996, from ten years to fifteen years. See generally *Commonwealth* v. *Bargeron*, 402 Mass. 589, 593-594 (1988); G. L. c. 277 § 63, as amended through St. 1987 c. 489, & St. 1996, c. 26.

(c) *Prior bad act evidence.* The defendant argues that the evidence related to the 1990 charge was unduly prejudicial and should have been excluded. Evidence of prior bad acts may not be used to show bad character or propensity to commit the crime charged but may be admitted to show "a common scheme, pattern of operation, absence of accident or mistake, identity, intent, or motive." *Commonwealth* v. *Helfant*, 398 Mass. 214, 224 (1986). See Mass. G. Evid. § 404(b) (2011). Here, the judge acted well within her discretion in admitting such evidence over the defendant's objection. The evidence was relevant to show a pattern of conduct, the existence of the same passion or emotion at the time in issue, and a full picture of the entire relationship with the victim, which in turn was relevant to proving the

[9]Other compelling evidence of constructive force was reasonably inferable in the case at bar, in that the defendant was able to truncate the victim's maturation by impregnating her, whereas in *Wallace*, evidence of the victim's ability to separate and mature resulted in the victim ultimately being able to resist the abuse. See 76 Mass. App. Ct. at 414.

element of force. See generally *Commonwealth* v. *King*, 387 Mass. 464, 470 (1982). Nor is the three-year gap between the birth of the victim's first child and the conception of her second child unfairly prejudicial, particularly when the defendant and the victim continued to live in the same home and his alcoholism, a percipient cause of the abuse, appeared to continue during this period. See *Commonwealth* v. *Helfant*, 398 Mass. at 228; *Commonwealth* v. *Sharpe*, 454 Mass. 135, 143-144 (2009); Mass. G. Evid. § 403.

*Conclusion.* For the reasons set forth above, we conclude that the judge did not err in denying the defendant's motion for a required finding of not guilty.

*Judgments affirmed.*