NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

11-P-954                                        Appeals Court

COMMONWEALTH  vs.  ROBERT MONIZ.

No. 11-P-954.

Middlesex.     February 12, 2015. - June 17, 2015.

Present: Cohen, Green, & Massing, JJ.

Rape. Assault with Intent to Rape. Practice, Criminal, Motion
    to suppress, Assistance of counsel, Admissions and
    confessions. Constitutional Law, Assistance of counsel,
    Admissions and confessions. Evidence, Admissions and
    confessions.


    Indictments found and returned in the Superior Court
Department on September 2, 2004.

    The case was heard by Elizabeth M. Fahey, J., and a motion
for a new trial, filed on January 14, 2014, was considered by
her.


    James A. Reidy for the defendant.
    Jamie Charles, Assistant District Attorney (Kevin L. Ryle,
Assistant District Attorney, with him) for the Commonwealth.


    MASSING, J. The defendant, convicted of eight counts of

sex offenses committed against his adopted son when the boy was

between the ages of fourteen and eighteen years old, appeals

from the three convictions based on his conduct after the victim

turned sixteen, one for rape in violation of G. L. c. 265, § 22(b), and two for assault with intent to rape in violation of G. L. c. 265, § 24, claiming insufficiency of the evidence.[1] He also appeals from the denial of his motion for new trial alleging that trial counsel was ineffective for failing to move to suppress the defendant's postindictment admissions to a person he asserts was acting in a law enforcement capacity. We affirm.

Background. The victim was born in August, 1978. The defendant met the victim after he entered into a romantic relationship with the victim's mother. In 1988, the victim's family began living with the defendant in Enfield, New Hampshire. In April, 1989, the defendant married the victim's mother and adopted the victim.

The first sexual incident occurred when the defendant arranged to sleep alone with the victim in a cabin the defendant had built in the middle of the woods, approximately two hundred yards from the house in Enfield. The defendant touched the victim's genitals over his clothing for a couple of minutes before they went to bed. The victim asked the defendant what he was doing, and the defendant told him, "[T]his is what all good

---

[1] The other convictions were on two counts of rape and abuse of a child under sixteen years of age, G. L. c. 265, § 23; one count of assault with intent to rape a child under sixteen, G. L. c. 265, § 24B; and two counts of indecent assault and battery on a person aged fourteen or older, G. L. c. 265, § 13H.

friends do."  The defendant would "do the same thing" at the print shop that the defendant and the victim's mother owned, where the victim sometimes worked.

The defendant took the victim into the cabin once or twice a week, mostly on the weekends, and more frequently during the summertime.  Over time, the defendant began touching the victim's genitals under his clothing.  The defendant would arrange to stay home alone with the victim while the victim's mother went out shopping for two to three hours at a time.  He performed fellatio on the victim numerous times, asked the victim to reciprocate, and told the victim that the victim was gay.  The victim refused the defendant's requests for fellatio but was afraid he could not otherwise protect himself from the defendant.

The victim asked the defendant at least once in New Hampshire, "[W]hy he was doing that, why didn't he just love my mother and leave me alone?"  The defendant convinced him that nobody would believe him if he reported their sexual encounters, and that it was better for his family if he would submit to the defendant's sexual demands.  As a result, the sexual episodes continued as the family relocated from New Hampshire to Rhode Island to Massachusetts.

The family moved to Waltham, Massachusetts, in 1993.  The victim, then a sophomore in high school, was five feet, ten

inches tall, and weighed 185 pounds. Even as a teenager, "it seemed easier" to the victim to remain silent and submit to the defendant's sexual demands. The defendant would "pitch a fit" when the victim resisted his advances. He threw several tantrums that quickly escalated from screaming to physical violence, "trashing" the victim's bedroom, and smashing walls. The defendant would eavesdrop on the victim's telephone conversations and become upset that the victim was spending time with females, making the victim feel "like [he] was splitting the family apart." The victim "didn't want to create problems within the family," and he "felt it was easier just to not say anything."

The defendant attempted to have anal sex with the victim on two separate occasions, once when the victim was around fourteen years old, and once after the victim's sixteenth birthday. Both times, the victim had been trying to take a shower in the bathroom after the defendant had performed fellatio on him when the defendant approached the victim from behind and "rubbed his penis on [the victim's] butt." The victim moved away and asked the defendant what he was doing. The defendant said nothing in response and eventually left him alone in the bathroom.

The defendant continued to sexually assault the victim after he turned sixteen years old in the same general manner as in the earlier sexual episodes. The episodes stopped when the

victim turned eighteen and moved into his grandparents' home in Lexington. The victim's mother testified that the defendant became depressed in the victim's absence, and a few months later, in November, 1996, the defendant attempted to commit suicide.

The defendant moved to Alaska in January, 1997, and the victim finally told his mother that the defendant had been sexually abusing him for years. Approximately four years later, the victim learned that the defendant was dating a woman in Alaska who had a four year old son. Fearing that the defendant would sexually abuse the son, the victim reported the defendant to the police.

In 2004, the defendant was arrested in Alaska and indicted in Massachusetts. As a condition of bail, the Alaska court appointed the mother of the defendant's new girlfriend to serve as the defendant's third-party custodian.[2] During the two- to three-week period of the defendant's pretrial release in Alaska, he made a series of admissions to his custodian regarding his sexual assaults on the victim. He told her that "he did it"; that he "hurt the child . . . , but he doesn't think it was hurting him"; and that "everything he did helped that child."

Discussion. 1. Constructive force. The defendant argues that the evidence was insufficient to prove that he used force

_____

[2] See note 5, infra.

to accomplish the sexual assaults after the victim reached the age of sixteen. To support a conviction for rape under G. L. c. 265, § 22(b), the Commonwealth must prove beyond a reasonable doubt that the defendant had sexual intercourse by force or threat of force and against the will of the victim. However, the Commonwealth need not prove that the defendant used physical force. Commonwealth v. Caracciola, 409 Mass. 648, 651 (1991). Constructive force may be shown by "proof that the victim was afraid or that she submitted to the defendant because his conduct intimidated her." Commonwealth v. Newcomb, 80 Mass. App. Ct. 519, 521 (2011) (Newcomb). In cases such as this, where sexual assaults that began when the victim was a child continue past the child's sixteenth birthday, constructive force may be shown by "a prior pattern of repeated sexual assaults by the defendant upon the victim when she was a child, combined with the victim's statement that the assaults always happened the same way." Id. at 524.

For example, in Commonwealth v. Wallace, 76 Mass. App. Ct. 411, 413-414, 417-418 (2010) (Wallace), where the defendant's sexual assaults on the victim began when the victim was eleven and continued until he turned eighteen, evidence of "the history of their relationship and the defendant's predatory behavior" was sufficient to support the rape conviction. The defendant had repeatedly raped the victim as a child, which had the effect

of "grooming the victim" to submit to the same conduct after he matured. Id. at 418 n.11. The victim submitted to the defendant after he turned sixteen because "he feared the consequences of resisting the defendant's sexual advances (even if the specific consequences he feared were not spelled out)." Id. at 418. These facts permitted the inference that the defendant compelled the victim to submit by force and against his will. Id. at 417-418.

Likewise in Newcomb, supra, we affirmed the defendant's convictions of rape of his adult daughter on a theory of constructive force. The defendant's assaults on the victim when she was under the age of sixteen "inculcated [in her a pattern of] submit[ting] to the defendant's advances." 80 Mass. App. Ct. at 522. The victim's dependence on her father, his mental abuse of her mother, his drunken tirades, and the "victim's testimony that every act of [abuse] followed the same pattern" permitted the inference that the sexual assaults of the adult victim were "accomplished in precisely the same circumstances that demonstrated constructive force when she was fourteen. Those circumstances included a fear of the defendant that was never dissipated." Id. at 523.

This case shares the hallmarks of constructive force found in Wallace and Newcomb. The assaults began when the victim was young and the defendant, his adoptive father, was an authority

figure.  The victim feared the defendant's angry, and sometimes violent, tirades and worried that the family would be split apart if he resisted the defendant's advances.  The pattern continued after the victim turned sixteen.  This evidence was sufficient to permit the jury to find the existence of the essential element of force or threat of force beyond a reasonable doubt.  See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979); Commonwealth v. Hanlon, 44 Mass. App. Ct. 810, 814 (1998).

The defendant also argues that the proof of force (or constructive force) was necessary to sustain his convictions of assault with intent to anally and orally rape the victim, and that such proof was absent.  However, proof of force is not needed to sustain a conviction of assault with intent to rape, the elements of which are "an assault on the victim and a specific intent . . . to rape the victim."  Commonwealth v. Martin, 447 Mass. 274, 287 n.9 (2006), citing Commonwealth v. Nickerson, 388 Mass. 246, 253 (1983).

The trial judge instructed the jury on the two common-law theories of assault, attempted battery and immediately threatened battery.[3]  Neither requires the use of force, or even

_____

[3] To convict on a theory of attempted battery, "the prosecution [must] . . . prove that the defendant intended to commit a battery, took some overt step toward accomplishing that intended battery, and came reasonably close to doing so. . . . A

that the victim be put in fear. Indeed, under the attempted battery theory, the victim does not even need to be aware of the attempt -- "the victim could be unconscious or have his back turned when the attempted battery occurred." Commonwealth v. Porro, 458 Mass. 526, 530 (2010). Under the threatened battery theory, "[t]he victim need not actually be in fear, but must apprehend the risk of an imminent battery." Id. at 531. The evidence was sufficient to prove both counts of assault with intent to rape.

2. Ineffective assistance of counsel. In his motion for a new trial, the defendant claimed that trial counsel was ineffective for failing to file a motion to suppress the admissions he made to his court-appointed custodian in Alaska after he had been indicted in Massachusetts and his right to counsel had attached.

The Sixth Amendment to the United States Constitution "generally prohibits any 'knowing exploitation by the State of an opportunity to confront the accused without counsel being present.'" Commonwealth v. Hilton, 443 Mass. 597, 614 (2005), S.C., 450 Mass. 173 (2007) (Hilton), quoting from Maine v.

_____

conviction of assault under a theory of threatened battery requires the prosecution to prove that the defendant engaged in conduct that a reasonable person would recognize to be threatening, that the defendant intended to place the victim in fear of an imminent battery, and that the victim perceived the threat." Commonwealth v. Porro, 458 Mass. 526, 530-531 (2010).

Moulton, 474 U.S. 159, 176 (1985).  This rule applies when law enforcement officials or their agents speak to defendants about their pending charges in the absence of counsel; it does not apply to communications initiated by "private citizens 'unconnected with law enforcement authorities.'"  Hilton, supra at 615-616, quoting from Commonwealth v. Allen, 395 Mass. 448, 454 (1985).

The defendant claims that his third-party custodian, appointed by the Alaska court under Alaska Stat. § 12.30.020 (2004),[4] was acting as an agent of Massachusetts prosecutorial authorities.  We disagree.  Alaska's unique third-party custodian arrangement was a form of supervised home detention.[5]  See Johnston, Sentenced by Tradition:  The Third-Party Custodian Condition of Pretrial Release in Alaska, 26 Alaska L. Rev. 317 (2009).  The appointment of the custodian, imposed in lieu of bail or pretrial detention, was for the defendant's benefit.  She did not act at the behest or on the behalf of the Commonwealth.

---

[4] This provision has since been repealed.  See 2010 Alaska Sess. Laws c. 19, § 30.

[5] Alaska Stat. § 12.30.020(b)(1), as then in effect, gave the judicial officer determining a defendant's pretrial release status the option of "plac[ing] the person in the custody of a designated person or organization agreeing as a custodian to supervise the person."  A custodian could be subject to prosecution for "failure to report immediately in accordance with the terms of the [release] order that the person released has violated a condition of release."  Ibid.

The defendant chose his girlfriend's mother as a custodian because she was friendly to him and her home was convenient. After his arrest, the defendant's girlfriend "begged" her mother to accept responsibility for supervision of the defendant in accordance with the conditions of pretrial release. According to the defendant, his two other sureties lived too far away, "all the way into Fairbanks," whereas his girlfriend's mother lived approximately one mile away in North Pole, Alaska.

The defendant likens his custodian to the court officer found to be the equivalent of a law enforcement official in Hilton. He argues that like the court officer, who "was required to report any observations or information concerning criminal activity," Hilton, 443 Mass. at 616, the custodian "was required to report any violations of law or conditions of release to the authorities." See Commonwealth v. Howard, 446 Mass. 563, 569 (2006) ("Our primary concern was, and remains, with the constitutional implications of questioning on matters concerning pending charges posed by persons whose official duties direct them to interact with a defendant and who may be required to turn any incriminating responses over to the police and prosecutor").

The defendant exaggerates his custodian's responsibilities. Her statutory duty was to assure the defendant's appearance at trial, and her reporting obligation was accordingly limited to

informing the court if "the person released has violated a condition of release."  Alaska Stat. § 12.30.020(b)(1).  She was not charged with investigating the pending charges or reporting other criminal conduct, nor did she.  She did not disclose the defendant's admissions until after the defendant had been extradited to Massachusetts, and then only when a Fairbanks police detective, at the request of the Waltham police, sought her out for questioning.  "[N]either the [custodian's] questions nor the defendant's responses were prompted or suggested by law enforcement officials."  Commonwealth v. Allen, 395 Mass. at 454.  Under these circumstances, an agency relationship did not arise between the custodian and the Commonwealth.

Because a motion to suppress would have been futile, the defendant cannot demonstrate that counsel was ineffective for failing to pursue it, or that counsel's failure to do so deprived him of a substantial defense.  See Commonwealth v. Saferian, 366 Mass. 89, 96 (1974); Commonwealth v. Conceicao, 388 Mass. 255, 264 (1983).  The judge's denial of the motion for new trial without an evidentiary hearing was well warranted.

Conclusion.  For the foregoing reasons, the defendant's motion for required findings of not guilty on the three

challenged charges and his motion for a new trial were properly denied.

<u>Judgments affirmed</u>.

<u>Order denying motion for new trial affirmed</u>.