NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-296

COMMONWEALTH

vs.

PEDRO LEACOCK.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial, the defendant was convicted of sixteen counts of aggravated rape of a child, twenty-four counts of rape of a child with force, fourteen counts of rape, four counts of incest, three counts of indecent assault and battery on a child under the age of fourteen, five counts of indecent assault and battery on a child over the age of fourteen, assault and battery, and strangulation.[1] In this consolidated appeal, the defendant claims that (1) the trial judge erred by denying his motion for a required finding of not guilty as to certain charges for lack of force; (2) his trial counsel was ineffective

_____

[1] The defendant was acquitted of four counts of rape of a child with force and improper storage of a firearm.

for failing to request a specific unanimity instruction; and (3) the motion judge erred in denying his amended motion for a new trial based on his trial counsel's failure to raise a purportedly viable argument for suppression. Discerning no errors, we affirm.

Background. We recite the following facts that the jury could have found, reserving some facts for later discussion.

In 2005, on the victim's eleventh birthday, she moved with her mother from Barbados to the United States into an apartment with her father, the defendant. Shortly after the victim moved into the apartment, the defendant began to sexually abuse her. The abuse, which included digital, oral, and penile penetration, took place almost every day. Despite the abuse, the victim testified that she had a close relationship with the defendant and felt that "[h]e was one of [her] best friends." She testified that her reaction to the abuse was to "just let him" proceed as she thought the abuse was "normal."

The victim testified that in 2010, when she was sixteen, she remained close to the defendant but they began to argue. He prevented her from going out with friends. The sexual abuse continued. She testified that she began to be "okay with it less and less" and to make excuses to avoid the defendant's advances.

In 2011, when the victim was seventeen, the sexual abuse decreased from nearly daily to three to five times per week. The victim and the defendant remained close. He drove her to and from school each day and did not allow her to do anything outside the house or with friends. He started to hit her if she "didn't do what he [said] or . . . what he wanted." The following year, his physical abuse escalated into punching and slapping her; he engaged in other controlling behaviors, such as searching through her room and laundry and locking her out of the house. He continued to sexually assault her both at home and at hotels.

In April 2015, after a harrowing physical confrontation with the defendant that served as the basis for his convictions of assault and battery and strangulation, the victim sought a restraining order. Based on the information that the victim provided to police, officers went to the home to arrest the defendant. When officers advised the defendant of their intent to arrest him for domestic assault and battery, the defendant admitted to pushing the victim against the wall because "she was being disrespectful." After the defendant was arrested, police officers recovered a pistol, several rounds of ammunition, and a taser from the home.

Discussion. 1. Constructive force. The defendant maintains that there was inadequate evidence of force. He

asserts that the counts charging him with rape of a child with force (before the victim turned sixteen) should have been dismissed because the jury heard no evidence of physical force or threat of bodily harm. As to the counts charging him with rape (after the victim turned sixteen), the defendant maintains that the victim consented so dismissal was required. Specifically, the defendant insists that "because the abuse began at a young age, [the victim] believed there was nothing wrong with the abuse" and therefore consented.

The defendant's argument ignores established case law on constructive force. See Commonwealth v. Caracciola, 409 Mass. 648, 653 (1991) ("force needed for rape may, depending on the circumstances, be constructive force, as well as physical force, violence, or the threat of bodily harm"); Commonwealth v. Armstrong, 73 Mass. App. Ct. 245, 254 (2008) ("Proof of the force element of rape under G. L. c. 265, § 22A [rape of a child by force], may be established by physical force or constructive force"). Therefore, the claim must fail. See Commonwealth v. Dube, 59 Mass. App. Ct. 476, 485 (2003); Commonwealth v. Healy, 26 Mass. App. Ct. 990, 991 (1998).

In reviewing the sufficiency of the evidence of force, we view the evidence in the light most favorable to the Commonwealth to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a

4

reasonable doubt."  Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting Jackson v. Virginia, 443 U.S. 307, 318-319 (1979).  There must be sufficient evidence for the jury to conclude beyond a reasonable doubt that the sexual acts were "against [the] will" of the child.  G. L. c. 265, § 22A.  See Caracciola, 409 Mass. at 653.  "Constructive force requires proof that the victim was afraid or that she submitted to the defendant because his conduct intimidated her" (quotation and citation omitted).  Commonwealth v. Vasquez, 462 Mass. 827, 846 (2012).  A determination of constructive force requires "examination of the circumstances or fear in which the victim is placed, the impact of those circumstances or fear on the victim's power to resist and the defendant's conduct." Caracciola, supra at 651.

Viewed in the light most favorable to the Commonwealth, the evidence here was sufficient for a finding of constructive force as to the events taking place before the victim was sixteen.[2]

---

[2] The victim's testimony permitted the jury to find actual force for some of the charges.  For example, the first time that the defendant penetrated the victim's vagina with his finger, she said that she felt "[a]wkward" and "[u]ncomfortable" and that she tried to move away from him.  Likewise, the first time that the defendant instructed the victim to fellate him, she testified that, "I like didn't want to . . . like [he] told me like -- just pretty much like just do it kind of thing."  He then moved her head, "touching the back of [her] head" with his hand, "towards [his penis] in a way, and then [she] ended up just doing it."  She testified that this encounter made her feel "[u]ncomfortable, and [she] didn't want to do it."  See

The abuse began when the victim was eleven years old and was perpetrated by a substantially older and presumably larger adult, her father.  See Armstrong, 73 Mass. App. Ct. at 255 ("By looking to the child's age and size, a [fact finder] could reasonably have inferred that the [rape] took place by force and against [her] consent" [citation omitted]).  The victim testified that that she did not leave the home without the defendant, that the defendant did not permit her to socialize with friends after school, and her free time was spent only with the defendant.  As in Commonwealth v. Newcomb, 80 Mass. App. Ct. 519, 522-523 (2011), the victim was dependent on the defendant not only for traditional needs -- such as money, food, and housing -- but the victim was also isolated from family and friends as she had relocated from a different country with only her mother.

Any lack of explicit testimony about the victim's fear of the defendant when she was a young child enduring his abuse[3] need not derail our conclusion because that "does not mean that the

Commonwealth v. Testa, 102 Mass. App. Ct. 149, 152-153 (2023) (evidence of force sufficient where, among other things, defendant placed victim's hand onto his erect penis).

[3] There was extensive testimony on the victim's fear of the defendant as she aged, as when she began rebuffing the defendant's attempts to abuse her, the defendant became violent with her.  Accordingly, the defendant's use of force in getting the victim to submit to him appears obvious for the rape charges pertaining to the period of time after the victim turned seventeen.

evidence was not sufficient to show that the rapes were committed against the victim's will, or that her power to resist was not overborne by the defendant."  Armstrong, 73 Mass. App. Ct. at 256.  "Indeed, that the victim endured the rapes with resignation and with no will to resist . . . is reflective of the very nature of the application of constructive force with respective to the crime of rape of a young person."  Id.

The evidence was also sufficient that the victim did not consent to the sexual encounters after she turned sixteen.  These "events must be viewed in light of the history of [the victim's and the defendant's] relationship and the defendant's predatory behavior."  Commonwealth v. Wallace, 76 Mass. App. Ct. 411, 418 (2010).  While the victim had reached the age of consent at this time, "Massachusetts decisional law has recognized that sexual conduct involving a young adult may well constitute rape because of what occurred before the victim matured."  Newcomb, 80 Mass. App. Ct. at 523.  "By the time [the victim] had turned sixteen, the defendant had been raping [her] for many years, starting when [she] was as young as eleven."  Wallace, supra.  See Newcomb, supra at 524 ("childhood assaults rendered the victim incapable of consenting to sexual intercourse with the defendant, and therefore, the only force that need be shown is the force necessary to accomplish the act").  The defendant concedes in his brief that once the victim

turned sixteen, she "would make excuses of why she didn't want to engage in sexual activity" but would acquiesce when pressed. See Armstrong, 73 Mass. App. Ct. at 256 (evidence of force still sufficient where young victim "accepted" rape because she "didn't think anything was wrong with it"). This is not consent.

2. Ineffective assistance of counsel. We review this claim under the familiar Saferian standard. See Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). The defendant makes two relevant arguments: he maintains that trial counsel (1) was ineffective for failing to request a specific unanimity instruction, an argument raised for the first time on appeal; and (2) "failed to raise a viable basis for suppressing the firearm, the taser, and the statement that the defendant made at the time of his arrest."

a. Failure to request a specific unanimity instruction. The defendant asserts that, "given the lengthy count indictment presented to the jury[,] a specific unanimity instruction could have made a difference in deliberations." Compare Commonwealth v. Conefrey, 420 Mass. 508, 513-514 (1995) (error where defendant requested specific unanimity instruction, none was given, and significant likelihood existed that "conviction resulted from different jurors concluding that the defendant committed different acts"). Because this argument was not

8

preserved in the trial court, see Commonwealth v. Quint Q., 84 Mass. App. Ct. 507, 514 (2013), we reverse only if the defendant demonstrates the existence of an error that creates a substantial risk of a miscarriage of justice. See Commonwealth v. Randolph, 438 Mass. 290, 294-295 (2002). There was no error.

While it is true that the Commonwealth presented evidence of multiple acts occurring over a large span of time to support seventy-three indictments, the verdict slips -- to which no party objected -- specified the acts and dates for each indictment. The judge properly instructed the jury. And the victim's testimony provided details, including general timeframes and locations, of abuse spanning several years. See Commonwealth v. Sanchez, 423 Mass. 591, 600 (1996); Commonwealth v. Monzon, 51 Mass. App. Ct. 245, 254-255 (2001) (specific unanimity instruction not necessary where no danger of lack of unanimity in jury's verdict because "victim testifies to a pattern of repetitive and abusive conduct, of necessity encompassing a number of discrete acts"). In the circumstances, trial counsel was not ineffective for choosing not to request an instruction on unanimity.

b. Failure to raise a suppression argument. The defendant maintains that trial counsel was ineffective in not contesting the legality of the police entry into his home and seeking to suppress on that basis the firearm, the taser, and his statement

9

that he pushed the victim for being disrespectful.[4]  He first raised this ineffective assistance claim in a motion for new trial that, as amended, was denied by a judge, who was neither the trial judge nor the suppression judge.

We review the motion judge's denial of the motion for a new trial "only to determine whether there has been a significant error of law or other abuse of discretion."  Commonwealth v. Grace, 397 Mass. 303, 307 (1986).  Here, the motion judge was well within his discretion to conclude that the wife twice consented to police entry -- first, at the time of the defendant's arrest, and second, when officers returned to retrieve the firearm -- because officers testified that she had let them into the home.  See Commonwealth v. Podgurski, 44 Mass. App. Ct. 929, 930 (1998), citing Commonwealth v. Ortiz, 422 Mass. 64, 70 (1996) ("Family members who live in a home together may validly consent to a search of that home").

The defendant fails to challenge this testimony.  Instead, he relies on there being no reference in the police report to a consent to entry.  This absence does nothing to undermine the testimony of an arresting officer that, after knocking on the door, the wife "let [the officers] into the residence" prior to

_____

[4] As a result of the seizure of the items, the defendant was charged with improper storage of a firearm, of which he was acquitted.  The jurors were instructed not to consider the possession of the taser as a criminal act.

10

the arrest and again "let [them] in" the home later.  On such a record, the motion to suppress would have likely been unsuccessful, and "[i]t is not ineffective assistance of counsel when trial counsel declines to file a motion with a minimal chance of success."  Commonwealth v. Testa, 102 Mass. App. Ct. 149, 155 (2023), quoting Commonwealth v. Clemente, 452 Mass. 295, 327 (2008).  See Commonwealth v. Moniz, 87 Mass. App. Ct. 532, 538 (2015) ("Because a motion to suppress would have been futile, the defendant cannot demonstrate that counsel was

ineffective for failing to pursue it, or that counsel's failure to do so deprived him of a substantial defense").

Judgments affirmed.

Order denying defendant's
  amended motion for new
  trial affirmed.

By the Court (Neyman,
  Hershfang & Hodgens, JJ.[5]),

Clerk

Entered:  June 24, 2024.

---

[5] The panelists are listed in order of seniority.